612 S.E.2d 244

**Joshua BRISTOL**

v.

**COMMONWEALTH of Virginia.**

**Record No. 1477–04–1.**

Court of Appeals of Virginia,
Chesapeake.

May 3, 2005.

536

Timothy V. Anderson (Anderson Good, P.C., on brief), Virginia Beach, for appellant.

Josephine F. Whalen, Assistant Attorney General (Jerry W. Kilgore, Attorney General, on brief), for appellee.

Present: Judges BENTON, FRANK and Senior Judge OVERTON.

JAMES W. BENTON, JR., Judge.

The trial judge convicted Joshua Bristol of driving under the influence of alcohol in violation of Code § 18.2–266 and of maiming another person while driving under the influence of alcohol in violation of Code § 18.2–51.4. At trial, the Commonwealth introduced into evidence a certificate of blood analysis to establish a rebuttable presumption that Bristol was intoxicated at the time of the alleged offense. *See* Code §§ 18.2–266(i) and 18.2–268.2. Bristol contends the trial judge erred in ruling he was arrested prior to removal of his blood and, consequently, erred in ruling the certificate was admissible under the implied consent statute. We agree and, for the reasons that follow, reverse his convictions and remand for a retrial if the Commonwealth be so advised.

## I.

On the evening of July 4, 2003, Joshua Bristol and two friends went to the Three Cheers Lounge, where they drank alcohol, played pool, and socialized for about three hours. Bristol exited the Lounge between 1:45 and 2:00 a.m., when it was closing. As Bristol walked to his motorcycle, Debra Fly asked if he would give her a ride on his motorcycle. Bristol

agreed. After Fly mounted the motorcycle, Bristol circled the parking lot at speeds estimated to be between 50 and 80 m.p.h. Completing his circuit of the parking lot, Bristol drove toward a crowd of people standing near the curb. The motorcycle struck a bystander, April Mapp, and knocked her into the air. Bristol lost control of the motorcycle, causing injury to himself and Fly when the motorcycle fell.

After police and paramedical personnel arrived, the paramedics took Mapp to a hospital. She suffered serious injuries to her head and brain and a broken leg. The paramedic who attended Bristol testified he had a head injury and smelled of alcohol. When he asked Bristol if he had been drinking, Bristol responded that he had. The paramedic took him to another hospital.

Officer Doyle arrived at the parking lot while the paramedics were attending Bristol. After interviewing witnesses at the parking lot, Officer Doyle went to the hospital to see Mapp and then went to the other hospital to see Bristol.[1] Officer Doyle testified that at 2:56 a.m. he orally informed Bristol that he was under arrest for suspicion of driving under the influence of alcohol and read from a card explaining to Bristol the implied consent statute. He testified that Bristol said he understood what the officer read to him and consented to having his blood drawn. Officer Doyle testified that he did not take Bristol into physical custody, explaining that Bristol was then being treated in the trauma unit by medical personnel. He took no other action to arrest Bristol. At 3:05 a.m., Bristol signed a consent form the hospital provided to Officer Doyle.

When Bristol was moved from the trauma unit to the emergency room, a medical technician prepared to draw his blood. Looking at the consent form, she asked Bristol his name and social security number to verify that she was drawing blood from the right person. She also asked if he

---

1. Officer Doyle testified he was told Bristol's passenger on the motorcycle was Mapp. All the witnesses who were present at the event testified, however, that Fly was the passenger and Mapp was the pedestrian.

understood that she was drawing blood for the officer. Bristol said that he understood she was doing that.[2] After she drew the blood from Bristol's arm, she sealed the vials in boxes and gave them to Officer Doyle.

Officer Doyle gave the vials of blood to Officer James Eberts, his supervisor, who was present when the technician withdrew the blood. Officer Doyle then left the hospital and went to the police station where he prepared a written statement. The statement confirms that he read Bristol the implied consent law and that Bristol agreed to having his blood drawn. It does not mention that he informed Bristol he was under arrest.

Officer Eberts testified he was the chief investigating officer for this case. At the parking lot, witnesses reported to him that Bristol was driving erratically and too fast, "struck a pedestrian who was on the lot causing motorcycle to slide, ejecting [Bristol] and the passenger." The witnesses told him that Mapp was the pedestrian and Fly was the passenger. Officer Eberts then went to the hospital and arrived as Officer Doyle was arranging for the withdrawal of Bristol's blood. Officer Eberts said he "tried to speak with Bristol, but he was incoherent." Bristol's "speech was slurred and slow and he was hurting." Officer Eberts testified Bristol was not arrested that night, explaining he "was not physically placed under arrest because he was in the hospital for treatment." Officer Eberts caused the vials eventually to go to the Division of Forensic Science for testing.

After Bristol received treatment at the hospital, he was discharged and went home. Two days after the accident, Officer Eberts spoke with Bristol by telephone and asked Bristol if he would "come visit [Officer Eberts] at the office." When Bristol voluntarily appeared at the police station a day later, Officer Eberts interviewed him. He did not inform

---

2. The hospital's consent form that Bristol signed, permitting the hospital to withdraw his blood, does not contain an acknowledgement by Bristol that he had been arrested.

Bristol that he had been arrested or that he was under arrest. He testified Bristol was free to leave and did leave.

Two months later on September 9, 2003, the grand jury indicted Bristol for driving under the influence of alcohol in violation of Code § 18.2–266 and maiming another while driving under the influence of alcohol in violation of Code § 18.2–51.4. On September 11, 2003, Bristol went to the police station, where a police officer arrested him and took him into custody. At trial, the judge admitted in evidence the certificate of analysis over Bristol's objection. It showed a blood alcohol content of .11. In addition to the certificate, an expert forensic toxicologist testified that at such a concentration, no person could safely operate a motor vehicle. At the conclusion of the evidence, the trial judge convicted Bristol of the offenses.

## II.

Bristol contends the officer did not validly arrest him prior to the removal of his blood, and he argues, therefore, the trial judge improperly admitted into evidence the certificate of analysis. The Commonwealth responds that the evidence proved a valid arrest, but, even if the certificate was inadmissible, the error was harmless.

We first turn to the statute. Code § 18.2–268.2 provides in pertinent part as follows:

A. Any person, whether licensed by Virginia or not, who operates a motor vehicle upon a highway, as defined in § 46.2–100, in this Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, if he is arrested for violation of §§ 18.2–266, 18.2–266.1 or § 18.2–272 or of a similar ordinance within three hours of the alleged offense.

A valid arrest must occur within three hours of the charged offense for a person to be deemed to have given his or her "implied consent" to have a blood sample taken under the statute. Code § 18.2–268.2. "An untimely arrest . . . results in

exclusion of the certificate of analysis of the blood." *Overbee v. Commonwealth,* 227 Va. 238, 242, 315 S.E.2d 242, 243 (1984). Likewise, "if the arrest is not lawful, consent for the blood alcohol test is not implied, and the results of any such test are inadmissible to prove intoxication." *Smith v. Commonwealth,* 32 Va.App. 228, 233–34, 527 S.E.2d 456, 459 (2000). When, as here, the issue on appeal concerns the validity of an arrest, we review that issue *de novo. Brown v. Commonwealth,* 27 Va.App. 111, 117, 497 S.E.2d 527, 530 (1998). *See also United States v. Hamlin,* 319 F.3d 666, 671 (4th Cir.2003) (holding that on appeal we review *de novo* the legal determination whether the officer's actions amount to an arrest).

■■■ "With a few statutory exceptions, ... the common law relating to arrest is the law on that subject in Virginia." *Galliher v. Commonwealth,* 161 Va. 1014, 1021, 170 S.E. 734, 736 (1933). An arrest requires " 'an assertion of authority and *purpose to arrest* followed by submission of the arrestee.' " *California v. Hodari D.,* 499 U.S. 621, 626, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991) (emphasis added) (quoting Rollin M. Perkins, *The Law of Arrest,* 25 Iowa L. Rev. 201, 206 (1940)). Applying these principles, we have previously held that "[t]he immediate physical ability to arrest, without more, was not sufficient to effectuate an arrest." *Cavell v. Commonwealth,* 28 Va.App. 484, 486, 506 S.E.2d 552, 553 (1998) (en banc). *See also Howard v. Commonwealth,* 210 Va. 674, 677, 173 S.E.2d 829, 832 (1970) ("Ordinarily, an arrest is made by the actual restraint of the person of the defendant or by his submission to the custody of an officer."). "At common law, four requisites are involved in arrest: (1) A purpose to take the person into custody, (2) under real or pretended authority, (3) resulting in actual or constructive seizure or detention of his person, (4) so understood by the arrestee." Perkins, *supra* at 208. The person to be arrested is entitled to know of "(1) the intention to take him into the custody of the law, (2) the authority for the arrest, and (3) the reason therefor." *Id.* at 249. Thus, at common law, mere words do not constitute an arrest. *Cavell,* 28 Va.App. at 487, 506 S.E.2d at 553.

■ Although Officer Doyle testified that he orally told Bristol he was under arrest, that did not suffice to constitute an arrest. *Id.* The record proves that neither Officer Doyle nor Officer Eberts took actions to actually arrest Bristol or to objectively manifest an arrest. Moreover, their actions do not suggest that their purpose was to arrest Bristol or that Bristol was ever in fact taken into custody. Indeed, when Officer Doyle left the hospital, he did not even inform Officer Eberts, his supervising officer, that he had "arrested" Bristol. The report he later prepared at the police station does not mention an arrest.

Officer Eberts, who remained with Bristol after Officer Doyle left the hospital, testified that he did not arrest Bristol and that Officer Doyle did not tell him that Bristol was under arrest. Officer Eberts further testified that when he attempted to talk to Bristol, Bristol was "incoherent" and was *not* under arrest. Bristol was treated and later left the hospital without any official restraint. Up to this point, no valid arrest had occurred.

Significantly, Code § 19.2–82(A) requires that "a person arrested without a warrant shall be brought forthwith before a magistrate or other issuing authority having jurisdiction who shall proceed to examine the officer making the arrest." It is undisputed that Officer Doyle failed to bring Bristol before a magistrate and had no apparent intention of doing so. Bristol was therefore never "arrested" within the meaning of the statute or the common law.

Bristol's consent to the taking of his blood cannot be deemed an acquiescence to an arrest. The implied consent law provides that "[a] person, *after having been arrested* ... may be required to submit to a blood test." Code § 18.2–268.2(C) (emphasis added). The statute, thus, presupposes a valid arrest before consent is obtained for the test. The consent to the taking of the test does not establish the fact of an arrest, which the statute first requires. To suppose that it does is to engage in a post hoc rationalization and circular reasoning. No evidence proved that the first officer took any

action to arrest Bristol or that Bristol submitted to an arrest. He merely consented to the taking of his blood after Officer Doyle told him that his refusal to consent could lead to the suspension of his driving privileges and could be used as evidence in a criminal trial.

In addition, the officers' actions after Bristol was released from the hospital also fail to show that their purpose was to arrest Bristol at the hospital or to take Bristol into custody. Two days after the accident, when Officer Eberts spoke by telephone with Bristol at his home, he did not inform Bristol that he was under arrest. Indeed, he sought Bristol's *voluntary* appearance for questioning. When Bristol arrived at the police station one day later, Officer Eberts questioned Bristol, but he did not tell Bristol he was under arrest. As Officer Eberts testified, Bristol was free to leave after questioning, and Bristol did leave. The record clearly establishes that the police did not take Bristol into custody until after the grand jury returned an indictment in September 2003, more than two months after the accident. Then, Bristol voluntarily appeared at the police station, where an officer served the indictment, arrested him, and took custody of him.

■ "The results of a blood or breath test provided by [the implied consent law] are admissible against the accused in a trial for driving under the influence of alcohol so long as the accused has first been validly arrested." *Durant v. Suffolk*, 4 Va.App. 445, 448, 358 S.E.2d 732, 734 (1987). We reasoned as follows:

> "Since the arrest was untimely, the defendant is not deemed to have consented to the testing of his breath under the 'implied consent' law. Moreover, defendant's actual consent in this case was invalid because it was based upon a belief, generated by the officer's recitation of the law, that he was bound to submit to a test. Hence, receipt of the certificate [of analysis] in evidence was improper."

*Id.* at 449, 358 S.E.2d at 734 (quoting *Thomas v. Town of Marion*, 226 Va. 251, 254, 308 S.E.2d 120, 122 (1983)). As in *Durant* and *Thomas*, Bristol's arrest months later was un-

timely for purposes of the implied consent law. Bristol was not validly arrested in the hospital and was not bound under the statute to submit to a blood test when in the hospital. Because his consent was not implied under these circumstances, and any actual consent "was based upon a belief, generated by the officer's recitation of the law, that he was bound to submit to a test," the trial judge erred by admitting the certificate of analysis into evidence.

### III.

The Commonwealth contends that even if the arrest was invalid, the search and seizure of Bristol's blood was valid under the exigent circumstances exception to the Fourth Amendment. Citing *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and *Tipton v. Commonwealth,* 18 Va.App. 370, 444 S.E.2d 1 (1994), the Commonwealth argues that although the certificate of analysis was inadmissible, the results from blood analysis were admissible, as in *Tipton,* via the testimony of the forensic toxicologist.

In *Tipton,* the trial judge made specific findings that the officer had probable cause to arrest the defendant and that exigent circumstances justified taking his blood. 18 Va.App. at 372, 444 S.E.2d at 2. The Commonwealth then introduced the test results through the testimony of the chemist who performed the test. The trial judge did not permit the prosecutor to use either the certificate of analysis or the statutory presumptions. *Id.* In comparison to *Tipton,* here the trial judge admitted the certificate of analysis into evidence. We can assume that by doing so, the trial judge sitting as fact finder applied the statutory presumption that Bristol was intoxicated.

Also, unlike *Tipton,* the trial judge made no finding that probable cause existed to arrest Bristol or that the search and seizure of his blood was reasonable under the Fourth Amendment. Given the limited investigation Officer Doyle had conducted prior to reading Bristol the implied consent statute, we cannot presume what findings the trial judge would have made

under the circumstances of this case. Thus, we hold that *Tipton's* reasoning does not apply.

## IV.

The Commonwealth contends that even if the trial court erred in admitting the evidence, the error was harmless. We disagree.

Recognizing the prejudicial effect of the certificate and the rebuttable presumption that attaches to it, the Supreme Court reversed a conviction in a case where a defendant "had a strong odor of alcohol about his person," was slurring his speech, and admitted to consuming beer and whisky. *See Thomas,* 226 Va. at 254, 308 S.E.2d at 121. In *Durant,* this Court similarly was unable to conclude, "as a matter of law that the result would not have been different if such evidence had not been considered by the trial court." 4 Va.App. at 449, 358 S.E.2d at 734. This is so "[b]ecause it is probable that [the fact finder] attached great weight to the incriminating evidence in the certificate." *Thomas,* 226 Va. at 254, 308 S.E.2d at 122. *Accord Overbee,* 227 Va. at 244, 315 S.E.2d at 245; *Castillo v. Commonwealth,* 21 Va.App. 482, 489, 465 S.E.2d 146, 149 (1995); *Durant,* 4 Va.App. at 449, 358 S.E.2d at 734.

We are unable to say from the circumstances of this case that the error did not affect the verdict. The trial judge admitted the certificate after ruling that the implied consent law was applicable. We can only assume that the judge relied upon the certificate in convicting Bristol. We and the Supreme Court have held that the error is not harmless even when there is compelling evidence of a defendant's intoxication independent of the certificate of analysis. *See, e.g., Castillo,* 21 Va.App. at 486, 465 S.E.2d at 148 (comparing *Overbee,* 227 Va. at 240, 315 S.E.2d at 243; *Thomas,* 226 Va. at 253, 308 S.E.2d at 121, and *Durant,* 4 Va.App. 445, 358 S.E.2d 732). As we held in *Castillo,* "[c]lear evidence ... implies that the trial court applied the statutory presumption of intoxication; we[, therefore,] cannot say from the facts and circumstances

that this error did not affect the verdict." 21 Va.App. at 491, 465 S.E.2d at 150.

For these reasons, we reverse the convictions and remand for a new trial if the Commonwealth be so advised.

*Reversed.*