PRESENT:  Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and Agee,
JJ., and Russell, S.J.

JOSHUA BRISTOL

v.  Record No. 060263    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                              November 3, 2006
COMMONWEALTH OF VIRGINIA


                    FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal involving two criminal convictions based on

a defendant's alleged operation of a motor vehicle while under

the influence of alcohol, we consider whether the circuit court

erred in admitting a certificate of blood analysis.

     Joshua Bristol was tried in the Circuit Court of the City

of Portsmouth for driving while under the influence of alcohol

(DUI), in violation of Code § 18.2-266, and for maiming another

as a result of driving under the influence, in violation of Code

§ 18.2-51.4.  At a bench trial, the Commonwealth offered in

evidence a certificate of analysis of Bristol's blood alcohol

content (BAC) to establish a rebuttable presumption under Code

§ 18.2-269 that Bristol was intoxicated at the time of the

offenses.  Over Bristol's objection, the circuit court admitted

the certificate of analysis, which showed that Bristol had a BAC

of 0.11 by weight by volume.

     Bristol was convicted of both offenses.  The circuit court

sentenced Bristol for the felony maiming offense to a term of

five years' imprisonment, with two years and six months

                                    1

suspended.  The court also sentenced Bristol to 12 months in jail for the DUI offense.

Bristol appealed his convictions to the Court of Appeals, arguing that the circuit court improperly admitted the certificate of analysis into evidence.  A panel of the Court of Appeals agreed and reversed Bristol's conviction, holding that the certificate of analysis had been improperly admitted into evidence because Bristol had not been arrested within three hours of the offenses as required by Code § 18.2-268.2(A).  Bristol v. Commonwealth, 45 Va. App. 534, 612 S.E.2d 244 (2005).

The Court of Appeals granted the Commonwealth's petition for rehearing en banc and stayed the panel's decision.  Bristol v. Commonwealth, 45 Va. App. 673, 613 S.E.2d 480 (2005).  On rehearing en banc, the Court of Appeals held that the circuit court properly admitted the certificate of analysis because Bristol was under arrest within three hours of the offenses as a result of submitting to a police officer's authority at the hospital.  Bristol v. Commonwealth, 47 Va. App. 584, 603, 625 S.E.2d 676, 685 (2006).  Bristol appeals from the Court of Appeals' judgment.

The evidence at trial showed that on July 4, 2003, Bristol and his friends were drinking alcoholic beverages and playing pool at the Three Cheers Lounge in Portsmouth.  When Bristol left the lounge around 1:45 a.m., he agreed to give Debra Fly a

2

ride on his motorcycle. Bristol drove his motorcycle around the lounge parking lot with Fly seated behind him as a passenger. Bristol's vehicle reached speeds estimated between 50 and 80 miles per hour.

While still in the parking lot, Bristol drove directly into a crowd of people without reducing his vehicle's speed. His motorcycle struck April Mapp, who was standing on the curb, causing her to be thrown into the air. As a result of the collision, Bristol fell off the motorcycle.

When City of Portsmouth Police Officer J.M. Doyle responded to the scene about 1:56 a.m., Bristol and Mapp were both lying in the parking lot. Mapp had head and brain injuries and a broken leg. Bristol was conscious, but had abrasions and bruises on his face. According to a paramedic who responded to the scene, Bristol smelled of alcoholic beverages.

At 2:50 a.m., Doyle went to the hospital to see Bristol, who was in a trauma unit waiting to be examined. Doyle observed that Bristol's speech was slurred and that he smelled strongly of alcoholic beverages.

At 2:56 a.m., Doyle told Bristol he was under arrest and informed him of the implied consent provisions of Code § 18.2-268.2. Bristol indicated that he understood those provisions and, at 3:05 a.m., signed a form authorizing the hospital to

3

draw a blood sample. Doyle did not take any measures at that time to restrain Bristol.

Shortly thereafter, hospital personnel moved Bristol from the trauma unit to the hospital's emergency room. Doyle accompanied Bristol to the emergency room and sat with him until a lab technician, Teresa Whitfield, arrived to draw Bristol's blood. However, Doyle took no measures to restrain Bristol or his movements. When Whitfield asked Bristol if he understood that she was drawing a blood sample at the request of the police, Bristol indicated that he understood. Whitfield drew the blood sample from Bristol.

After taking possession of the vials containing Bristol's blood, Doyle returned to the police station to write a report of the parking lot incident. In that report, Doyle did not indicate that Bristol had been arrested.

Soon after Doyle left the hospital, Officer James Eberts arrived and attempted to interview Bristol. However, Bristol was incoherent, his speech was slurred, and he was in pain from the accident. Eberts left the hospital without taking any further action regarding Bristol. When Bristol was released from the hospital later that day, he was not taken into police custody or brought before a magistrate.

Two days later, Eberts telephoned Bristol and asked Bristol to come to the police station to be interviewed. Bristol went

4

to the police station and, after Eberts conducted an interview there, Bristol left without any further action by the police. About a month later, Bristol telephoned the police to inquire about Mapp's condition. On none of these occasions did the police tell Bristol that he was under arrest or indicate that he would be charged with a criminal offense.

In August 2003, the Division of Forensic Science completed a certificate of analysis after performing tests on the blood sample drawn from Bristol at the hospital after the accident. The certificate of analysis indicated that Bristol's blood alcohol content at the time the sample was taken was 0.11 by weight by volume.

A grand jury indicted Bristol on September 4, 2003. On September 11, 2003, Bristol presented himself at the police station and was taken into custody.

On appeal, Bristol argues that the circuit court improperly admitted the certificate of analysis into evidence. Bristol contends that he was not arrested at the hospital on the date of the offenses, because he was not restrained by the police or taken before a magistrate. He asserts that because he was not validly arrested within three hours of the offenses as required by Code § 18.2-268.2(A), he did not impliedly consent to have his blood drawn. Therefore, Bristol maintains, a rebuttable presumption of intoxication did not arise under Code § 18.2-269.

5

In response, the Commonwealth argues that the certificate of analysis was properly admitted into evidence. The Commonwealth contends that by "telling Bristol that he was under arrest and advising him of the implied consent law, [Officer] Doyle asserted his lawful authority to arrest Bristol." Therefore, the Commonwealth maintains, Bristol was under arrest at the hospital as soon as he consented to have his blood drawn, because that consent constituted a submission to Officer Doyle's authority. We disagree with the Commonwealth's arguments.

We review de novo the issue of law whether the undisputed facts before us establish that the officers effected an arrest of Bristol. See United States v. Hamlin, 319 F.3d 666, 671 (4th Cir. 2003); United States v. Sinclair, 983 F.2d 598, 601 (4th Cir. 1993). The mere words of an officer stating to a suspect that he is "under arrest" are not sufficient to constitute an arrest. California v. Hodari D., 499 U.S. 621, 626 (1991); State v. Oquendo, 613 A.2d 1300, 1309-1310 (Conn. 1992). An arrest occurs when an officer physically restrains a suspect or, in the absence of physical restraint, the suspect submits to the officer's assertion of authority and purpose to arrest. Hodari D., 499 U.S. at 626; White v. Commonwealth, 267 Va. 96, 104, 591 S.E.2d 662, 666 (2004); Howard v. Commonwealth, 210 Va. 674, 677, 173 S.E.2d 829, 832 (1970).

6

An arrest completed by a suspect's submission to police authority must manifest the suspect's complete surrender of his personal liberty to the officer's authority.  As we explained in Howard, "an arrest is made by the actual restraint of the person of the defendant or by his submission to the custody of an officer."  Id. at 677, 173 S.E.2d at 832; see also White, 267 Va. at 104, 591 S.E.2d at 666.  Thus, after an arrest, a suspect's liberty is completely constrained, at least until a judicial officer has determined the issue of bail.  Commonwealth v. Hill, 264 Va. 541, 547, 570 S.E.2d 805, 808 (2002).

In the present case, it is undisputed that neither Officer Doyle nor Officer Eberts physically restrained Bristol at the hospital after Officer Doyle told Bristol that he was "under arrest."  Therefore, Bristol was arrested at the hospital only if his consent to the blood test constituted a complete surrender of his personal liberty in submission to Officer Doyle's assertion of authority.  We conclude that Bristol's consent to the blood test was not such a surrender of his personal liberty.

Bristol merely agreed to submit to a blood test.  He did not make any statement nor did he act in a manner demonstrating a complete surrender of his personal liberty to Officer Doyle's control.

The events that occurred at the hospital confirm the limited nature of Bristol's acquiescence. After Officer Doyle informed Bristol of the implied consent provisions of Code § 18.2-268.2 and Bristol agreed to have the blood sample drawn, Doyle did not restrict Bristol's movements in any manner. Officer Doyle merely accompanied Bristol to the emergency room where Bristol's blood was drawn. Officer Doyle then left the hospital, taking no action to constrain Bristol's personal liberty. Likewise, Officer Eberts did not act in a manner that could be construed as constraining Bristol's personal liberty. Bristol left the hospital on his own, and the police did not take any immediate action to restrain him. Thus, Bristol's consent to the blood test did not constitute a submission to police authority resulting in an arrest.

The language of the implied consent statute lends further support to our conclusion. Under Code § 18.2-268.2(A), a person who operates a motor vehicle on a highway in Virginia is deemed to consent to have a sample of his blood or breath taken for chemical analysis if he is arrested for a violation of Code § 18.2-266 or certain other related statutes within three hours of the alleged offense. This requirement is further detailed in subsection B of the statute, which states in relevant part that a person "so arrested . . . shall submit to a breath test" or,

under specified circumstances, a blood test.  Code § 18.2-268.2(B).

Under these provisions, a driver must be arrested within three hours of an offense before that driver may be required to submit to a breath or blood test.  Because the driver's timely arrest triggers the statutory consent requirement, the arrest must be completed before the driver may be required to take the test.  Thus, based on this statutory language, a driver's mere agreement to take a breath or blood test cannot constitute a functional component of the driver's arrest.

Accordingly, we hold that Bristol was not arrested within three hours of the offenses as required by the implied consent provisions of Code § 18.2-268.2.  Therefore, the certificate of blood analysis obtained pursuant to that statute was inadmissible at trial.  See Overbee v. Commonwealth, 227 Va. 238, 242-43, 315 S.E.2d 242, 243-44 (1984); Thomas v. Town of Marion, 226 Va. 251, 254, 308 S.E.2d 120, 122 (1983).

The Commonwealth argues, nevertheless, that Bristol's blood test results were admissible under the "exigent circumstances" exception to the Fourth Amendment search warrant requirement.  We find no merit in this argument.

The mere fact that a defendant's blood alcohol content might dissipate is insufficient, by itself, to support application of the "exigent circumstances" exception.  The

9

possibility that blood alcohol content may dissipate exists in every instance in which a driver has consumed alcoholic beverages. Moreover, the "exigent circumstances" exception advocated by the Commonwealth would undermine completely the implied consent provisions of Code § 18.2-268.2. A driver's consent to take a blood or breath test would not be required, even when there is probable cause to arrest the driver for a violation of Code § 18.2-266 or a related statute, once it is determined that the driver has consumed alcoholic beverages.

We also conclude that the Commonwealth's reliance on the holdings in Schmerber v. California, 384 U.S. 757 (1966), and Tipton v. Commonwealth, 18 Va. App. 370, 444 S.E.2d 1 (1994), is misplaced. In Schmerber, unlike in the present case, the defendant was validly arrested before a blood sample was taken. Holding that there was "no time to seek out a magistrate," the Supreme Court concluded that the seizure of the defendant's blood was "an appropriate incident" of his arrest. Id. at 771. Because Bristol was not validly arrested before he submitted to the blood test, the reasoning employed in Schmerber is inapplicable here.

Additionally, we reject the reasoning employed by the Court of Appeals in Tipton. There, the defendant had not been arrested within the time period required by the implied consent statute. Nevertheless, the Court of Appeals applied the

10

analysis in Schmerber, holding that the defendant's blood alcohol level was properly obtained pursuant to the exigent circumstances exception to the search warrant requirement. 18 Va. App. at 374, 444 S.E.2d at 6. Under the facts in the present case, that reasoning effectively could undermine the implied consent procedures mandated by Code § 18.2-268.2 and render irrelevant the issue of a driver's consent. Therefore, we conclude that evidence of Bristol's blood alcohol content was not admissible under the "exigent circumstances" exception to the Fourth Amendment search warrant requirement, and that the circuit court erred in admitting into evidence the results of Bristol's blood test.

Finally, we disagree with the Commonwealth's contention that the erroneous admission of Bristol's blood test results was harmless error. It is probable that the circuit court, as the trier of fact, attached great weight to the information contained in the certificate. See Thomas, 226 Va. at 254, 308 S.E.2d at 122. Therefore, we do not reach the issue whether the other evidence of intoxication, apart from the certificate of analysis, is sufficient to sustain Bristol's convictions. Id.

For these reasons, we will reverse the Court of Appeals' judgment and remand the case to that Court with direction that the matter be remanded to the circuit court for a new trial on both charges, if the Commonwealth be so advised.

11

JUSTICE LEMONS, with whom JUSTICE KINSER joins, dissenting.

Because I would hold that Bristol was arrested at the hospital, I respectfully dissent.

Events that transpired after the drawing of Bristol's blood are irrelevant to the inquiry before us. Either Bristol was arrested at the hospital or he was not; the police failures thereafter do not affect the analysis in this case.

"Whether an officer has probable cause to arrest an individual in the absence of a warrant is determined under an objective test based on a reasonable and trained police officer's view of the totality of the circumstances." Brown v. Commonwealth, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005). "[P]robable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E. 2d 833, 836 (1981).

Around 1:56 a.m. on July 5, 2003, Officer Doyle was called to Three Cheers Lounge ("Three Cheers"). Officer Doyle knew Three Cheers served alcohol and that Bristol had been inside Three Cheers the night of the accident. Upon dispatch to the

12

scene, Officer Doyle found Bristol lying in the parking lot in front of Three Cheers. Officer Doyle learned from witnesses at the scene that Bristol was "showing off" when he drove his motorcycle into a crowd of people, causing the injury for which he is now charged. When Officer Doyle arrived at the hospital where Bristol had been transported, he noticed Bristol's speech was slurred and that the smell of alcohol was "quite strong." Code § 18.2-266(ii) prohibits a person from operating a motor vehicle "under the influence of alcohol." The totality of the circumstances in this case would warrant a reasonable person to believe that Bristol was "under the influence of alcohol." Clearly, Officer Doyle had probable cause to arrest Bristol.

Having established the requisite probable cause, the next question is whether Bristol was, in fact, arrested such that evidence of the certificate of blood analysis was admissible at trial pursuant to Code § 18.2-268.2(A). The majority holds that "Bristol was not arrested within three hours of the offenses as required by the implied consent provisions of Code § 18.2-268.2," and therefore, "the certificate of blood analysis obtained pursuant to that statute was inadmissible at trial."

Code § 18.2-268.2 does not define "arrest," but "[w]ith a few statutory exceptions, . . . the common law relating to arrest is the law on that subject in Virginia." Galliher v. Commonwealth, 161 Va. 1014, 1021, 170 S.E. 734, 736 (1933).

13

This Court has held that:  "Ordinarily, an arrest is made by the actual restraint of the person of the defendant <u>or by his submission to the custody of an officer</u>."  <u>Howard v. Commonwealth</u>, 210 Va. 674, 677, 173 S.E.2d 829, 832 (1970) (emphasis added).  Officer Doyle told Bristol that he was under arrest before reading him the implied consent law.  While Officer Doyle did not physically restrain Bristol, physical restraint is not necessary to constitute an arrest.  <u>See</u> <u>California v. Hodari D.</u>, 499 U.S. 621, 626-27 (1991).  An arrest occurs once a person "submits to the authority of the officer." <u>White v. Commonwealth</u>, 267 Va. 96, 104, 591 S.E.2d 662, 666 (2004).

The majority contends that Bristol's consent to the blood test was not a submission to Officer Doyle's authority.  The majority concludes that "Bristol merely agreed to submit to a blood test.  He did not make any statement nor did he act in a manner demonstrating a complete surrender of his personal liberty to Officer Doyle's control."  However, the facts in the record indicate otherwise.

Officer Doyle told Bristol he was under arrest.  Officer Doyle confirmed Bristol's arrest by reading him the implied consent card which stated in relevant part that:

> Any person who operates a motor vehicle upon a highway as defined in 46.2-100 in this Commonwealth is deemed thereby as a condition of such operation to have

14

> consented to have samples of his blood and breath taken for chemical test to determine the alcohol and drug content of his blood <u>if arrested within three hours of the alleged offense or violation</u> . . . . He shall submit to a breath test unless the test is unavailable or you are physically unable to comply, in which case a blood test will be given.

(Emphasis added.) Indicating he understood the card read to him, Bristol signed a consent form to have his blood drawn.

The majority argues that the language of Code § 18.2-268.2(A) "cannot constitute a functional component" of the arrest because the arrest itself "triggers the statutory consent requirement." However, in my view consent and submission are not analytically mutually exclusive. By consenting to have his blood drawn, Bristol submitted to Officer Doyle's authority. Code § 18.2-268.2(A) merely states that if arrested "within three hours of the alleged offense" "[a]ny person . . . who operates a motor vehicle upon a highway . . . in the Commonwealth shall be deemed . . . to have consented to have samples of his blood . . . taken."

Notwithstanding the fact that Bristol submitted to Officer Doyle's authority when he signed the consent form, Bristol continued to submit to Officer Doyle's authority. Under Officer Doyle's authority, Bristol was "taken from the trauma area" and placed in an emergency department room. Officer Doyle sat in the room with Bristol until the lab technician arrived to draw Bristol's blood. Upon arrival, the technician informed Bristol

15

that his blood was being drawn "for the police officer."
Bristol told the lab technician that he understood this, and the
technician proceeded to draw Bristol's blood.  These actions
were all completed in the presence of and pursuant to Bristol's
submission to the authority of Officer Doyle.

"[T]he test for existence of a 'show of authority' is an
objective one:  not whether the citizen perceived that he was
being ordered to restrict his movement, but whether the
officer's words and actions would have conveyed that to a
reasonable person."  Hodari D., 499 U.S. at 628.  A reasonable
person in Bristol's position at the hospital before getting his
blood drawn would have perceived that his movement was
restricted and that he was not free to leave.  The successive
actions taken by Bristol in this case constitute a clear
submission to Officer Doyle's authority.

The impracticability of the majority opinion is illustrated
by asking a simple question:  During the very brief time between
announcing the arrest and obtaining consent to take blood, what
more was the officer expected to do with a seriously injured
person whom the officer has informed is under arrest?  Was the
officer to handcuff Bristol or restrain him in some other manner
and risk interference with his medical care?  While the majority
emphasizes that the officers involved may have failed to follow
up properly after arrest, the actions of the officers after

16

obtaining the blood sample are not relevant to the determination whether he was arrested at the hospital. Either Bristol was arrested or he was not; subsequent failures on the part of the police do not have any bearing on this question. Unfortunately, motor vehicle operators who are both injured and intoxicated arrive at hospital emergency rooms on a regular basis in this Commonwealth. This majority opinion unnecessarily, and, I believe, incorrectly impedes law enforcement officers in the performance of their duties.

Accordingly, I would affirm the judgment of the Court of Appeals.