COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Petty and Beales
Argued at Salem, Virginia


TERRY JOE LYLE

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 0121-07-3                          JUDGE WILLIAM G. PETTY
                                                           APRIL 29, 2008
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF RUSSELL COUNTY
                          Charles H. Smith, Jr., Judge Designate

              Nicholas B. Compton (Compton & Compton, on brief), for
              appellant.

              Leah A. Darron, Senior Assistant Attorney General (Robert F.
              McDonnell, Attorney General, on brief), for appellee.


       Terry Joe Lyle appeals his conviction for driving under the influence as a fourth or

subsequent offense, in violation of Code § 18.2-266.  He argues he was not under arrest at the time

his blood was drawn for analysis and the trial court committed error in admitting into evidence the

results of the analysis.  Even assuming for the sake of argument that the trial court erred, we find

any error harmless on the facts of this case.  Accordingly, we affirm Lyle's conviction.

                                           I.

       On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation omitted).

That principle requires us to "'discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences that may be drawn therefrom.'"  Kelly v. Commonwealth, 41 Va. App. 250,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

254, 584 S.E.2d 444, 446 (2003) (*en banc*) (quoting <u>Watkins v. Commonwealth</u>, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)).

On March 24, 2004 at 7:53 a.m., the Virginia State Police received a telephone call from a citizen reporting a traffic accident on Castlewood Run Road in Russell County. State Trooper J.D. Anderson, responding to the call, arrived at the scene of the accident at approximately 8:59 a.m. and found a car suspended across a creek adjacent to the highway. The engine was running, and the car was still in gear with the driver's side door open. There was no one in the car or in the vicinity. At approximately 9:17 a.m., Trooper Anderson received information from the tow truck driver that an individual was nearby in a ditch. Trooper Anderson drove approximately three hundred feet down the road and saw Lyle standing in the middle of the road.

When he approached Lyle, Trooper Anderson noticed a strong odor of alcohol coming from Lyle. He also testified that Lyle's speech was extremely slurred and that he was so unsteady on his feet that he was barely able to stand without falling or having to hold on to something. The trooper also noticed that Lyle had minor cuts and abrasions on his arms and hands and his trousers were wet from his feet to his knees. Trooper Anderson initially asked Lyle to perform some field sobriety tests, but stopped after concluding that Lyle was so unsteady that it would be unsafe for him to attempt to perform any of the tests.

In response to questions posed by Lyle's defense attorney, Trooper Anderson went on to testify that Lyle was "extremely drunk, inebriated," that his speech was "extremely slurred," and that he had to repeat things to Lyle and ask Lyle to repeat his responses because he was so difficult to understand. Lyle admitted to Trooper Anderson that he was the driver of the car involved in the crash.

Trooper Anderson told Lyle he was charging him with driving under the influence and placed Lyle in his cruiser and advised him of his rights under the implied consent law[5] and Miranda. However, Anderson testified at trial that Lyle was not under arrest at that point because "he needed medical attention." Anderson explained:

> At that point it was obvious that he needed medical treatment, and when there's an issue of medical treatment, and the possibility of a custodial arrest, I tell the individual when I have the probable cause to make a charge, I tell the individual, "I am charging you with DUI". . . I do not say "You are under arrest for DUI," and then that way, if the person is admitted to the hospital, the custody matter is not an issue. In other words, if he's admitted to the hospital, he is still not in my custody . . . .

When asked by the prosecutor what time he placed Lyle under arrest, Trooper Anderson testified: "I never actually took custody of Mr. Lyle as in placing him under arrest. What I did was, when I found him in the road, I told him I was charging him with DUI at that time." The prosecutor then asked, "You never specifically took him into your custody?" Anderson responded, "No sir, he needed medical attention."

Trooper Anderson then drove Lyle back to the accident scene and turned him over to the rescue squad for transport to the hospital. At Trooper Anderson's instruction, a nurse drew a sample of Lyle's blood at 11:36 a.m. At 1:00 p.m. that afternoon, and while still at the hospital, Trooper Anderson served Lyle with a uniform traffic summons for driving under the influence.

---

[5] Virginia's implied consent law, Code § 18.2-268.2(A), states in pertinent part:

> Any person . . . who operates a motor vehicle upon a highway . . . in the Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, *if he is arrested for [driving under the influence] within three hours of the alleged offense*.

(Emphasis added).

At trial, Lyle objected to the introduction of the blood test results arguing that he had not been arrested prior to his blood being drawn at the hospital. The trial court overruled the objection and permitted introduction of the blood test results, which showed Lyle's blood alcohol content was 0.23% by weight by volume. After the jury convicted Lyle, he filed a motion to set aside the verdict citing Bristol v. Commonwealth, 272 Va. 568, 636 S.E.2d 460 (2006).[6] The trial court denied the motion, and this appeal followed.

II.

Lyle contends that because Trooper Anderson did not arrest him within three hours of his driving under the influence, the implied consent law does not apply in this case and, accordingly, the blood test result showing his BAC was inadmissible at trial. We need not reach that issue. For the purposes of this opinion, we will assume, without deciding, that he is correct.

---

[6] In Bristol, 272 Va. at 575, 636 S.E.2d at 464, our Supreme Court held that a certificate of blood test analysis obtained pursuant to the implied consent law was inadmissible at trial when the accused had not been arrested within three hours of the offense as required by the statute. In Bristol, the Court also rejected the Commonwealth's harmless error argument because it determined that "it [was] probable that the circuit court, as the trier of fact, attached great weight to the information contained in the certificate." Id. at 576, 636 S.E.2d at 465. However, the facts in Bristol are very different from the facts in this case. There, the appellant was described as having an odor of alcohol at the scene and as having slurred speech while being treated for his injuries at the hospital. Id. at 572, 636 S.E.2d at 462. As discussed *infra*, the evidence concerning Lyle's intoxication is far more compelling. See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) ("Whether such an error is harmless in a *particular* case depends upon a host of factors, all readily accessible to reviewing courts. (emphasis added)); see also McLean v. Commonwealth, 32 Va. App. 200, 211, 527 S.E.2d 443, 449 (2000) ("An error is harmless . . . if 'other evidence of guilt is "so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict . . . .""" (quoting Ferguson v. Commonwealth, 16 Va. App. 9, 12, 427, S.E.2d 442, 444-45 (1993))).

We conclude, however, that the other evidence of his intoxication was so compelling that any error involving the admission of his blood alcohol level was harmless.[7]

"The harmless error check on judicial power has never been a begrudged limitation, but rather one favored by Virginia courts, because it grows out of the imperative demands of common sense, and consequently has been deeply embedded in our jurisprudence." Kirby v. Commonwealth, 50 Va. App. 691, 699, 653 S.E.2d 603-04 (2007) (citations and internal quotation marks omitted). We recently explained the harmless error doctrine in some detail in Kirby, 50 Va. App. at 699, 653 S.E.2d at 604:

> A criminal defendant "'is entitled to a fair trial but not a perfect one,' for there are no perfect trials." Brown v. United States, 411 U.S. 223, 231-32 (1973) (citations omitted). "No litigant has the right to demand more, and no Commonwealth ought to give less." Walker v. Commonwealth, 144 Va. 648, 652, 131 S.E. 230, 231 (1926). Absent an error of constitutional magnitude, "no judgment shall be arrested or reversed" when "it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached . . . ." Code § 8.01-678.
>
> \* \* \* \* \* \* \*
>
> It is "the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless" lest they "retreat from their responsibility, becoming instead impregnable citadels of technicality." United States v. Hasting, 461 U.S. 499, 509 (1983).

It is well settled that the erroneous admission of evidence is non-constitutional error. Estelle v. McGuire, 502 U.S. 62, 68-70 (1991). Thus, in order to determine whether such error was harmless, we examine the record to determine if "it plainly appears from the facts and circumstances" of this case that the "error did not affect the verdict." Lavinder v.

---

[7] We have recognized "an appellate court decides cases 'on the best and narrowest ground available.'" Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (quoting Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991)). Further, an appellate court may, as we do here, structure its decision on an "assuming but not deciding" basis, which is appropriate for a harmless error analysis. Id.

Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (*en banc*) (setting forth standard for non-constitutional error pursuant to Code § 8.01-678). We can come to that conclusion here because we conclude, "without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Id. at 1006, 407 S.E.2d at 910.

There was overwhelming evidence introduced at trial showing that Lyle was under the influence of alcohol.[8] When Trooper Anderson stopped Lyle, Anderson detected a strong odor of alcohol emanating from Lyle. Lyle was barely able to stand without falling or having to hold onto something and was so unsteady he could not safely perform field sobriety tests. On cross-examination, Trooper Anderson described Lyle as "extremely drunk" and Lyle's speech as "extremely slurred" and "difficult to understand." Based on this record, we conclude the verdict would have been the same in the absence of the blood test results. Accordingly, any error committed by the trial court was harmless.

III.

For the reasons discussed, we affirm the judgment of the trial court.

Affirmed.

---

[8] We also note that Lyle's defense at trial was that he was not driving the car. Lyle did not argue that he was sober. Instead, during his closing argument Lyle's attorney argued that Lyle was too intoxicated to have fled the immediate location of the crash. His attorney stated that Lyle was "so drunk that he [could not] even stand up" an hour and a half after the accident and that Lyle was "wobbling" and could not "move good . . . ." He further conceded before the jury that "what we do know is, an hour and a-half later, Terry couldn't walk a straight line; he couldn't even stand up."

McClanahan, J., concurring.

To the extent there is any doubt as to the weight the jury attached to the information contained in the certificate, see Bristol v. Commonwealth, 272 Va. 568, 636 S.E.2d 460 (2006), I conclude the trial court did not err in admitting the certificate, and therefore, concur in the result.

Lyle argues he was not under arrest until the summons was later served on him at the hospital after his blood test and, thus, the results of the blood test contained in the certificate are inadmissible. Under Code § 18.2-268.2, any person who operates a motor vehicle in Virginia is deemed to consent to chemical testing of his blood and breath if he is arrested within three hours of the alleged offense. The driver's arrest "must be completed before the driver may be required to take the test." Bristol, 272 Va. at 575, 636 S.E.2d at 464. Otherwise, the results of the test are inadmissible. Id.

Lyle specifically argues the officer's actions at the scene amounted to no more than a "custodial detention" and that when Trooper Anderson informed Lyle he was charging him with driving under the influence, Anderson's "statement put the defendant on notice that sometime in the future he would be charged with a crime." Whether Lyle was arrested prior to having his blood drawn is a question of law that we review *de novo*. See Bristol, 272 Va. at 573, 636 S.E.2d at 463.

Although the definition of "arrest" is not given in Code § 18.2-268.2, the Supreme Court of Virginia has applied common law principles relating to arrest to determine whether an individual was arrested within the meaning of that section. See id. at 573-74, 636 S.E.2d at 463. According to the Court, "[a]n arrest occurs when an officer physically restrains a suspect or, in the absence of physical restraint, the suspect submits to the officer's assertion of authority." Id. at 573, 636 S.E.2d at 463 (citing California v. Hodari D., 499 U.S. 621, 626 (1991); White v.

- 7 -

Commonwealth, 267 Va. 96, 104, 591 S.E.2d 662, 666 (2004); Howard v. Commonwealth, 210 Va. 674, 677, 173 S.E.2d 829, 832 (1970)).

Although Trooper Anderson testified he did not believe he was taking Lyle into custody "as in placing him under arrest" since he was allowing him to be taken to the hospital by the rescue squad, his subjective beliefs are not relevant to the determination of whether the detention of Lyle became an arrest for purposes of the implied consent statute. "[T]he subjective views of the police officer who effects a detention have no bearing on whether that detention constitutes an arrest." United States v. Elston, Jr., 479 F.3d 314, 319 (4th Cir. 2007); see also Dixon v. Commonwealth, 270 Va. 34, 40, 613 S.E.2d 398, 401 (2005) ("[T]he subjective perspective of either the suspect or the interrogating police officer has no bearing on the issue whether the suspect was 'in custody.'").

Trooper Anderson stopped Lyle in the road and detained him for questioning.[5] After learning Lyle was the driver of the vehicle involved in the accident, observing Lyle's conduct, smelling the odor of alcohol, and further observing Lyle's wet pants, Trooper Anderson determined he had probable cause to arrest Lyle. Anderson informed Lyle he was charging him with driving under the influence and placed him in his cruiser. He informed Lyle of the implied consent law and read Lyle his Miranda rights. Lyle submitted to Anderson's show of authority

---

[5] In the context of a Terry stop, the United States Supreme Court has stated that

> the officer may ask the detainee a moderate number of questions to determine [the suspect's] identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released.

Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984).

- 8 -

and remained in the cruiser until he was transported to the hospital where Anderson stayed with him and ordered the blood test that was performed under Anderson's supervision.[6]

Accordingly, I would hold that Trooper Anderson arrested Lyle at the scene of the accident. In my view, the trial court did not commit error in admitting the results of his blood test because Lyle was under arrest at the time of the test. Therefore, I concur in affirming the judgment of the trial court.

---

[6] Lyle's reliance on Bristol is misplaced. That case did not involve a Terry stop. Rather, an officer investigating an accident first spoke to the defendant at the hospital. Although the officer told the defendant at the hospital he was under arrest, he did not physically restrain him. 272 Va. at 572, 636 S.E.2d at 462. The Supreme Court of Virginia held that consent to the blood test was not a submission to the officer's show of authority. Id. at 574, 636 S.E.2d at 463. In contrast, Lyle did submit to Trooper Anderson's show of authority when, after being told he was being charged with driving under the influence, he got into the cruiser and remained with Trooper Anderson until his transport to the hospital.

Conversely, the defendant in Bristol was telephoned by the officer two days after the hospital visit and was asked to come to the police station to be interviewed. After the interview, the defendant left the station. A month later, defendant called the police to inquire as to the condition of another individual in the accident. In none of these three subsequent discussions was an arrest mentioned. Two months after the accident, defendant was indicted by the grand jury. Id. at 572-73, 636 S.E.2d at 462.