HUMPHREYS, J.,
dissenting.
I respectfully dissent from the majority’s holding that Young was under arrest prior to the application of the implied consent law, and thus would hold that the circuit court erred in admitting the evidence of the certificate of Young’s blood alcohol analysis.
“We review de novo the issue of law whether the undisputed facts before us establish that the officers effected an arrest of [appellant].” Bristol v. Commonwealth, 272 Va. 568, 573, 636 S.E.2d 460, 463 (2006) (citations omitted). Virginia’s implied consent statute, Code § 18.2-268.2, provides in pertinent part that,
Any person ... who operates a motor vehicle upon a highway ... in the Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, if he is arrested *743 for violation of § 18.2-266 ... within three hours of the alleged offense.
(Emphasis added). The Supreme Court explained Code § 18.2-268.2 arrest requirements as follows:
Under these provisions, a driver must be arrested within three hours of an offense before that driver may be required to submit to a breath or blood test. Because the driver’s timely arrest triggers the statutory consent requirement, the arrest must be completed before the driver may be required to take the test.
Bristol, 272 Va. at 574-75, 636 S.E.2d at 464 (emphasis added). Thus, a valid arrest prior to taking the test is statutorily required as a prerequisite to the admission into evidence of any blood or breath test results under Virginia’s implied consent law. See Roseborough v. Commonwealth, 281 Va. 233, 239, 704 S.E.2d 414, 417 (2011) (“Because Roseborough was not validly under arrest for violation of Code § 18.2-266 when his breath was tested, the implied consent law did not apply and its provisions permitting the certifícate of analysis to be admitted into evidence were not triggered.”).
Notwithstanding the contrary position taken by the majority, our Supreme Court and this Court have expressly held that, “[generally, ‘the common law relating to arrest is the law on that subject in Virginia.’ ” Hall v. Commonwealth, 55 Va.App. 451, 454-55, 686 S.E.2d 554, 555-56 (2009) (quoting Galliher v. Commonwealth, 161 Va. 1014, 1021, 170 S.E. 734, 736 (1933)), aff'd, 280 Va. 566, 701 S.E.2d 68 (2010) (applying common law principles of arrest).[8] We have previously ad *744 hered to this precedent noting that, “the Supreme Court of Virginia has held that if the arrest requirements of implied consent are not satisfied, any certificate of analysis obtained pursuant to Code § 18.2-268.2 is inadmissible at trial.” Sprouse v. Commonwealth, 53 Va.App. 488, 492, 673 S.E.2d 481, 482 (2009) (citing Bristol, 272 Va. at 575, 636 S.E.2d at 464). “The mere words of an officer stating to a suspect that he is ‘under arrest’ are not sufficient to constitute an arrest.” Bristol, 272 Va. at 573, 636 S.E.2d at 463 (citing California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 1550-51, 113 L.Ed.2d 690 (1991); State v. Oquendo, 223 Conn. 635, 613 A.2d 1300, 1309-10 (1992)).
Under common law, “[a]n arrest occurs when an officer physically restrains a suspect or, in the absence of physical restraint, the suspect submits to the officer’s assertion of authority and purpose to arrest.” Id. (citing Hodari D., 499 U.S. at 626, 111 S.Ct. at 1550-51; White v. Commonwealth, 267 Va. 96, 104, 591 S.E.2d 662, 666 (2004); Howard v. Commonwealth, 210 Va. 674, 677, 173 S.E.2d 829, 832 (1970)). An arrest “ ‘is accomplished by merely touching, however slightly, the body of the accused, by the party making the arrest and for that purpose____’ ” Hodari D., 499 U.S. at 625, 111 S.Ct. at 1550 (quoting A. Cornelius, Search and Seizure 163-64 (2d ed.1930) (footnote omitted)). On the other hand,
[a]n arrest completed by a suspect’s submission to police authority must manifest the suspect’s complete surrender of his personal liberty to the officer’s authority. As explained *745 in Howard, “an arrest is made by the actual restraint of the person of the defendant or by his submission to the custody of an officer.”
Bristol, 272 Va. at 573-74, 636 S.E.2d at 463 (quoting Howard, 210 Va. at 677, 173 S.E.2d at 832).
First, I address the summons issued pursuant to Code § 19.2-73(B). The majority contends initially that in reading Code §§ 19.2-73 and 19.2-74 in pari materia, “it is clear that while an arrest under Code § 19.2-73(B) is not a traditional custodial arrest requiring a suspect to undergo the booking process and appear before a magistrate, it is an arrest nonetheless.” The majority then concludes “[t]he summons was not an arrest warrant. It did not cause Young to be arrested. To the contrary — it released Young from arrest.” From this initial premise, the majority uses reverse logic to conclude that, since one cannot be released unless first arrested, Code §§ 19.2-73(B) and 19.2-74 must augment the common law principles of arrest because in “[r]eading these statutes in pari materia with the implied consent statute, an arrest followed by a release on summons satisfies the requirement of ‘constraining’ the arrestee’s personal liberty, Bristol, 272 Va. at 574, 636 S.E.2d at 463, for purposes of implicating the statutory duty to provide a blood or breath sample.” In other words, under the analysis of the majority, if a summons has been issued, an arrest must ipso facto have occurred previously. However, the facts in the record in this case provide little support to the majority’s supposition that the issuance of a summons means that an arrest must have occurred prior to the blood sample being taken, or that the issuance of the summons and subsequent signature by Young exemplify a submission to an arresting officer’s show of authority.
It is important to note that Trooper Finch issued the summons after the blood sample was taken, and not prior to it. As our Supreme Court has held, “the arrest must be completed before the driver may be required to take the test.” Bristol, 272 Va. at 574-75, 636 S.E.2d at 464. Thus, the majority’s emphasis on the issuance of the summons is misplaced, and is of little use as a crutch to support a holding that *746 a lawful arrest occurred in this case prior to the taking of the blood sample. See Sprouse, 53 Va.App. 488, 673 S.E.2d 481 (holding the trial court erred in admitting the certificate at trial because the purported arrest — signing the summons— took place after the blood test was administered). Further, the fact that a summons is “a post-arrest document which facilitates prompt release upon a promise to appear” does not, in the alternative, stand for the proposition that because a summons was issued and signed then, a fortiori, a lawful arrest actually occurred at some earlier time. Davis v. Commonwealth, 17 Va.App. 666, 671, 440 S.E.2d 426, 430 (1994). For the same reasons, I also cannot subscribe to the majority’s implicit suggestion that Young’s acceptance of the summons and his consent to have the blood sample taken constitute a sort of nunc pro tunc submission to Trooper Finch’s authority at that time or on some earlier occasion. Bristol, 272 Va. at 575, 636 S.E.2d at 464 (“Thus, based on this statutory language, a driver’s mere agreement to take a breath or blood test cannot constitute a functional component of the driver’s arrest.”).
Lastly, while Code § 19.2-73, as amended in 2010, specifically provides that “[t]he issuance of such summons shall be deemed an arrest for purposes of Article 2,” this still does not satisfy the requirement in Code § 18.2-268.2 that the arrest be completed prior to taking the test. Assuming, arguendo, that the issuance of a summons in this case constitutes contemporaneous evidence of an arrest, any such “arrest” would then have occurred after the blood sample had been taken. Thus, the summons has no bearing on whether an actual arrest occurred either by physical restraint or submission to the officer’s authority prior to the test being taken — as required by Code § 18.2-268.2.[9]
*747 Contrary to the majority’s contention, I do not believe that Code §§ 19.2-73(B) and 19.2-74 augment the common law principles of arrest or indeed have any application at all to a determination of whether an arrest occurred prior to the taking of the blood sample in this case.[10] Rather, in my view, the outcome of the issue presented in this appeal is entirely controlled by the Supreme Court’s decision in Bristol and most recently in Roseborough, as well as this Court’s decision in Sprouse, and by an application of the common law principles of arrest and the plain language of the implied consent statute. In the present case, there is no evidence that Trooper Finch ever physically touched Young for the purpose of placing him under arrest, nor that Young did or said anything that would constitute a submission to Trooper Finch’s police authority by manifesting a complete surrender of his personal liberty. At the hospital, Trooper Finch informed Young verbally that he was “under arrest” while Young was lying in a hospital bed in the emergency room “hooked up with IVs,” at *748 which point Trooper Finch said Young did not try to leave the hospital.[11] Trooper Finch, still standing next to the hospital bed, then advised Young of his Miranda rights and of the implied consent statute. While Trooper Finch read Young the implied consent notice, this recitation does not “expressly reaffirm[] that Young had been ‘arrested’ by an ‘arresting officer’ ” as the majority contends. If mere words cannot constitute an arrest, then it follows that a recitation of statutory language cannot “expressly affirm” nor constitute an arrest.
After Trooper Finch informed Young of the implied consent statute, Young consented to the withdrawal of his blood samples, and Trooper Finch subsequently took one of the samples. Trooper Finch then issued Young a summons pursuant to Code § 19.2-73, and left the hospital. At trial, Trooper Finch testified that he could not recall if he ever put a hand on Young, if Young ever acknowledged the arrest, or if Young was even strapped down to the hospital bed. Thus, at no time did Trooper Finch physically restrain Young at the hospital after he told Young that he was “under arrest” and prior to the blood sample being taken.
Turning to any submission to police authority, aside from the fact that any submission to authority constituting an *749 arrest is statutorily required prior to the utilization of the procedures in the implied consent statute, in my view, Young’s consent to the blood test could not constitute a submission to Trooper Finch’s authority, nor did his actions evince any such submission. See Bristol, 272 Va. at 574, 636 S.E.2d at 464 (concluding that, without more, Bristol’s consent to the blood test was not a surrender of his personal liberty but rather simply an agreement to submit to a blood test). Young never made any statement nor did he act in a manner demonstrating that he was completely surrendering his personal liberty to Trooper Finch’s control. Young merely acquiesced to the taking of a blood test after he was verbally informed that he was under arrest, read his Miranda rights, and notified about the implied consent statute. When the blood sample was taken, Trooper Finch remained by Young’s side, and then left the hospital after receiving one of the samples and issuing a summons. Trooper Finch never restrained Young nor did he take any other actions to constrain Young’s personal liberty.
For all of these reasons, I would hold that Young was not under “arrest” prior to the taking of his blood sample, and thus the circuit court abused its discretion when it admitted the certificate of the blood alcohol test. Accordingly, I would reverse Young’s conviction and remand for a new trial if the Commonwealth is so advised.

. While recognizing their existence, the majority departs from the application of the common law principles relating to arrest, and justifies this departure by a comparison of the "catch-and-release” provisions of Code §§ 19.2-73(B) and 19.2-74 with the implied consent statutes in support of its conclusion that in reading them in pari materia, "an arrest followed by a release on summons satisfies the requirement of 'constraining' the arrestee's personal liberty, Bristol, 272 Va. at 574, 636 S.E.2d at 463, for purposes of implicating the statutory duty to provide a blood or breath sample. The very fact that Young was formally released with a summons indicates he had been formally arrested.” However, this approach ignores the predicate *744 question of whether an arrest actually occurred such that a "release" followed. Furthermore, the majority's departure from the application of the common law principles of arrest on the ground that statutes, when read in pari materia implicitly augment the application of longstanding common law principles, is a holding built upon a quicksand foundation that foreshadows the possibility of unintended consequences in conflict with the long held bedrock jurisprudential and statutory principle embodied in Code § 1-200 that the common law remains in full force and effect unless clearly altered by statute. In addition, Code §§ 19.2-73(B) and 19.2-74 do not define what constitutes an "arrest,” but merely refer to the officer as the "arresting officer.” Thus, the common law principles of an arrest are still applicable even in reading the statutes in pari materia.

. The majority holds that "[t]he issuance of the summons under Code § 19.2-73(B), releasing Young from arrest, served as a statutory marker confirming Young’s ongoing submission to the arresting officer’s authority. By signing the summons, Young acknowledged his continuing submission to the arrest and his promise to appear in court as a condition for being released from arrest.” However, an individual does *747 not submit to an officer's police authority merely by taking a summons from the hand of the officer, nor is such a submission evidenced by his signature on a summons. As Code §§ 19.2-73 and 19.2-74 make clear, a summons is a charging document similar to a warrant, information, or indictment which can be issued by a magistrate irrespective of whether any arrest has previously occurred, and as such it merely initiates and serves as notice of the initiation of proceedings in a court of competent jurisdiction but has no bearing on the issue of when or if an arrest has occurred. Further, in this case both the acceptance and the signing of the summons took place after the blood sample was taken, and thus also have no bearing on whether Young was actually arrested prior to the test through a submission to the officer’s assertion of authority.

. The majority contends that my position is that the legislature did not change the common law principles of arrest despite its enactment of Code §§ 19.2-73 and 19.2-74. However to be precise, my position is simply that the common law principles of arrest are still applicable when determining whether an arrest actually occurred. As the majority observes, a "summons serves as a ‘post-arrest document which facilitates prompt release upon a promise to appear.' Davis v. Commonwealth, 17 Va.App. 666, 671, 440 S.E.2d 426, 430 (1994) (emphasis added).” Thus, as I noted above and consistent with the holding of Bristol, we must look to the common law principles in order to determine if, in fact, an arrest took place.

. The majority notes that even though Young was already physically restrained by his connection to IVs, Trooper Finch remained with him after the blood sample was drawn, advised him of the charge pending against him, and obtained his signature on the summons all prior to leaving the hospital thus constituting a constraint of Young’s liberty by Trooper Finch. While the majority excuses the requirement of some physical touching by Trooper Finch due to Young’s medical condition and the circumstances of his treatment by the medical staff of the hospital, the fact remains that there is no evidence of physical touching by Trooper Finch or evidence that the hospital staff were somehow acting as agents of Trooper Finch when touching Young or determining how to treat his injuries. In the absence of evidence of any agency relationship, the hospital's restraint of Young is irrelevant to any analysis of Young's custody status. Further an individual should not be required to remove IVs or other physical restraints put in place by the hospital for the purpose of treatment and physically leave the hospital in order to negate any imputation of physical restraint to an officer standing nearby.