# Richmond

## OTIS PUCKETT v. COMMONWEALTH.

January 24, 1944.

Record No. 2764.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*George Abbitt, Jr.*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *Edwin B. Jones, Assistant Attorney General*, for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

The accused, Otis Puckett, was tried by a jury upon an indictment charging him with the murder of one William Starry. He was found guilty of involuntary manslaughter and his punishment fixed at confinement in the penitentiary for a period of five years.

It is assigned as error that the court erred in refusing to set aside the verdict of the jury.

The basic contention of the accused is that there is no evidence supporting a conviction of involuntary manslaughter, and that, therefore, the verdict is not responsive to the charge of murder alleged in the indictment.

Upon the trial of the case, accused admitted the killing but claimed that it was accidental. In support of his claim that the death of Starry was the result of an accident, the accused testified that in July, 1942, he went to Baltimore in search of employment; that he became acquainted with Starry and his wife, and Starry employed him as a helper in his business as a coal dealer. While so employed, accused lived in the home of Starry and they became fast friends. In the month of November, 1942, Starry, his wife and accused came to Appomattox, Virginia, and stayed at the home of the accused's parents. Accused further testified that on the morning of the 23rd of November he and Starry went

hunting; that, while hunting, the dog they had with them began to chase a rabbit; that they "squatted" down on the side of the hill waiting for the rabbit to come back to its nest; that accused was above him; that while in this position they heard the dog bark and in an attempt to get up, he stumbled, and in his effort to prevent falling, he thrust his right hand backward, causing the gun to discharge, and its load entered the head of Starry at the base of the skull; that he rushed back to the house and in his excitement told his parents someone had shot Starry.

The case of the Commonwealth is an entirely different one from that of the accused. It is the age-old story of "the eternal triangle." Without substantial contradiction, the case of the Commonwealth is as follows: The accused, at the time of the tragedy, was twenty-three years old and was married and the father of three children. He and his wife were estranged, and during that time he went to Baltimore, Maryland, and was employed by Starry, who was a coal dealer and had accumulated over $10,000 worth of property. While living in the home of Starry, accused became criminally intimate with Mrs. Starry. Starry on one occasion accused his wife of being too familiar with accused and slapped her. In November, 1942, Starry, his wife and accused visited the home of accused in Appomattox. While there, a hunting trip was suggested. Mrs. Starry was anxious to accompany accused and Starry but was told by accused to stay at home and they would take her on a hunt in the afternoon. Accused carried a shotgun and Starry carried a rifle on the hunt. Within a short time after their departure, accused returned to the house, bringing with him Starry's wallet which contained $90, and gave it to Mrs. Starry and reported that her husband had been killed by someone. Accused denied that he had a gun with him on the hunt and he denied any knowledge of the manner in which Starry met his death.

When questioned by W. H. McKinney, the sheriff of the county as to what happened, accused stated that while he was at a distance of approximately one hundred yards from

Starry, he heard a shot and heard Starry exclaim, "Otis" or "Negro," and heard someone running down through the woods. Although frequently questioned, for a period of ten days accused maintained that he did not know who shot Starry. Finally, he admitted the shooting and claimed that it was accidental. It was further shown by the Commonwealth that the conduct of Mrs. Starry was passing strange. Not once did she exhibit any grief over the death of her husband. On the contrary, she attempted to provide bail for the accused, in order that he could take charge of the coal business.

In our opinion, if the jury had found the accused guilty of murder, the verdict would be sustained. By some strange process of reasoning, however, the jury came to the conclusion that accused was guilty of involuntary manslaughter. This conclusion presents the contention of accused, that since there is no evidence to sustain the verdict of the jury, finding the accused guilty of involuntary manslaughter, it should be set aside. This would mean a discharge of the accused from further prosecution.

The case of *Mundy* v. *Commonwealth*, 144 Va. 609, 131·S. E. 242, is relied upon. That case is not analogous and, therefore, not in point.

The contention made by the accused is not a new one in this jurisdiction.

Section 4918 of Michie's Code provides: "If a person indicted of felony be by the jury acquitted of part of the offense charged, he shall be sentenced for such part as he is so convicted of, if the same be substantially charged in the indictment, whether it be felony or misdemeanor."

In an indictment for murder, the elements of crime embraced therein are murder, voluntary manslaughter, involuntary manslaughter and simple assault.

In *Burton* v. *Commonwealth*, 108 Va. 892, 62 S. E. 376, this question was presented:

"Upon behalf of the plaintiffs in error it is claimed that the prisoners ought to be discharged; that it appears by all of the evidence that if they were guilty of any offense, it

was that of murder by lying in wait; and that the verdict of murder in the second degree rendered by the jury upon the trial in the county of Accomac acquitted them of murder in the first degree, the only offense of which they could with any propriety have been guilty under the evidence."

In holding that the jury, in the exercise of its power, may, in its discretion, find an accused guilty of an offense less in degree than that shown by the evidence, Judge Keith said:

"Our jurisprudence, in this and in other respects, may be amenable to criticism of school-men and logicians, but subjected to the test of actual experience it has appeared in practice to be well that the law, after framing definitions and formulating rules of conduct, should allow to courts and juries, in their application and enforcement, a certain latitude and discretion. And so it comes to pass that a man may be indicted for murder of the first degree by the various means embraced in the statute, the evidence adduced may tend to the proof of the offense named in the indictment and none other, and yet the jury, acting under this discretion with which they have been clothed by the law, may find the offender guilty of a less offense. And it is well in practice that it should be so, else, owing to the tenderness of juries and their reluctance to impose the highest penalty, many crimes would go wholly unpunished, and thus the rigor of the law would tend rather to the promotion than to the prevention of crime."

In *Tucker* v. *Commonwealth*, 159 Va. 1038, 167 S. E. 253, this doctrine was re-affirmed in an opinion by Mr. Justice Hudgins. There it is said: "Whatever the rule may be in other jurisdictions, in this State Code, sections 4918, 4920 and 4393 have been held to be *in pari materia* and should be read together."

In *Maxwell* v. *Commonwealth*, 165 Va. 860, 183 S. E. 452, the same contention was made. The accused, a young woman, was tried upon an indictment containing two counts. "The first count charged that on the 27th day of August, 1934, on and upon one Virginia D. Cole, the accused felon-

iously did make an assault, and by the threat and presenting of firearms, to-wit: a pistol, the said Virginia D. Cole was put in bodily fear, and seventy-two dollars of the goods and chattels of the Western Union Telegraph Company, Inc., were feloniously stolen and carried away by the defendant. The second count charged the felonious taking of the money by putting the said Virginia D. Cole in fear, but did not charge the presentation of arms."

The accused was found guilty on the second count of the indictment and her punishment fixed at five years in the penitentiary. In the opinion this is said:

"The attack made on the verdict is that the evidence shows that if defendant is guilty of any offense, she is guilty of robbery under the first count of the indictment, to-wit: robbery accomplished by 'threat or presenting of firearms,' for which offense the minimum punishment is eight years in the penitentiary; that, in view of the fact that the jury found the defendant guilty on the second count and fixed her punishment at five years in the penitentiary, there was an acquittal on the first count, and as there was no evidence to sustain the conviction under the second count, the verdict and judgment are void."

In holding the contention untenable, the doctrine stated in *Burton* v. *Commonwealth, supra,* and *Tucker* v. *Commonwealth, supra,* was re-affirmed, the court saying: "In our opinion the power of the jury to find an accused guilty of an offense embraced in the indictment, though of a lesser degree than is warranted by the evidence, is firmly established in Virginia."

The refusal of the court to give instruction H is assigned as error.

This instruction sought to tell the jury its duty when dealing with the question of circumstantial evidence.

On the motion of the Commonwealth this phase of the case was fully covered by a proper instruction and it was not error to refuse to again instruct the jury upon the question of circumstantial evidence.

The accused has had a fair trial and, in our opinion, he has been leniently dealt with by the jury.

There is no error in the judgment complained of and it will be affirmed.

*Affirmed.*