## Richmond

John Henry Howard, Jr. v. Commonwealth of Virginia.

April 27, 1970.

Record No. 7238.

Present, All the Justices.

*R. R. Ryder*, for plaintiff in error.

*C. Tabor Cronk, Special Assistant Attorney General (Robert Y. Button, Attorney General*, on brief), for defendant in error.

I'Anson, J., delivered the opinion of the court.

John Henry Howard, Jr., defendant, was tried by a jury on an indictment charging robbery, found guilty, and his punishment was fixed at confinement in the State penitentiary for a period of five years. He was sentenced accordingly, and we granted defendant a writ of error.

Defendant contends that the court erred (1) in denying his motion to suppress certain evidence, and (2) in denying his requested instruction No. B.

The evidence shows that at appoximately 1:50 a.m. on the morning of January 27, 1968, a "dark" complexioned man, wearing dark pants and sweater and a red ski mask, entered the Holiday Inn located on Robin Hood Road in the City of Richmond and, pointing a pistol at the night auditor on duty, directed him to fill up an ice bucket with money. A total of $844.84, mostly in bills with a minor portion in coin, was taken. The man then left, and as the night auditor was reporting the robbery to the police he saw a white Pontiac pull rapidly away from the motel in the direction of Sherwood Avenue.

Officer W. G. Wilson received a call from the police dispatcher reporting the robbery, and as he was proceeding toward Sherwood Avenue he saw an old model Pontiac, dirty white or light green in color, whose driver had on a red stocking cap. He followed the car, and as he neared the Pontiac the driver stopped, jumped out of the car, and disappeared in a residential area. Wilson noticed that the man was a Negro and he was wearing a dark jacket and light colored pants. He called for assistance and a K-9 unit responded.

When Officer Carroll, of the K-9 unit, reached the area, his dog picked up a scent at the point where the driver abandoned the car and tracked it for three or four blocks to the 2500 block of Northumberland Avenue, where the scent was lost. Carroll went over the area on foot for 45 minutes and then began to patrol in his car. At about 3:00 a.m. he spotted a taxicab in the area with its roof light out, indicating it had a fare. He stopped the cab and asked the driver where he had picked up his passenger. When the 2500 block of Northumberland was indicated, Carroll asked the defendant to step out of the cab and identify himself. Carroll saw that the passenger was a Negro and was dressed only in a shirt and trousers although the temperature was 26 degrees. Defendant was asked his name, address and occupation. Carroll then asked his fellow officer sitting in the squad car to radio for the detectives assigned to the case. He neither asked the defendant any more questions nor told him he had to remain there until the detectives arrived.

Fifteen or twenty minutes later Detective-Sergeant M. W. Johnson arrived. He asked defendant to get into his car, since the defendant wore no jacket and the temperature was below freezing, and defendant complied. Johnson asked him how he came to be in

that area and was given two contradictory answers. The detective noticed that defendant's pockets were bulging and asked him if he could see what was in them. After some hesitation, defendant began pulling money out and handed it to Johnson. The total amount was $506.00 in bills. During this action Johnson noticed an object about the size of a pistol in defendant's right hip pocket, and he reached over and pulled out a .38 caliber revolver. Defendant was then placed under arrest and advised of his constitutional rights, in keeping with *Miranda* v. *Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

■ Defendant first contends that when Officer Carroll stopped the taxicab the action was an effective arrest; and that because he had no probable cause to believe defendant had committed the robbery, the arrest was merely an "arrest for investigation" and therefore illegal. He thus argues that the gun and the money taken from him in a search subsequent to this illegal arrest should have been suppressed as evidence. We do not agree.

In support of his contention that the arrest occurred when the officer stopped the taxicab, defendant relies on *Henry* v. *United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *Beck* v. *State of Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); and *Bowling* v. *United States*, 350 F.2d 1002 (1965).

In the *Henry* case, government agents obtained information that one Pierotti was involved in a theft from an interstate shipment of whiskey. The next day the officers saw Pierotti in a car being driven by Henry. The car stopped in an alley in a residential section. Henry picked up some cartons which he put in the car and drove off. When the car returned and was loaded with more cartons, the agents followed it for a short distance and then stopped it. A search was made and Henry and Pierotti, along with the cartons, were taken to the agents' office. Two hours later it was learned that the cartons contained stolen radios, and the two men were then placed under formal arrest. The court held that the arrest took place when the agents stopped the automobile; that the agents did not have reasonable cause to believe Henry had committed an offense, and hence the arrest and search without a warrant were unlawful even though it was disclosed that the radios were stolen.

It is important to note that in the *Henry* case the stop, arrest and search were simultaneous events, all occurring in the absence of probable cause. Thus the facts in the present case differ from those

in *Henry*, and that case is not controlling here. For the same reasons *Beck, supra,* and *Bowling, supra,* are not applicable here.

The crucial question here is whether defendant was arrested when the cab was stopped and the defendant was told to get out and identify himself. Ordinarily, an arrest is made by the actual restraint of the person of the defendant or by his submission to the custody of an officer. But since there is a recognized distinction between detaining a person for purposes of identification and that of arresting him, we must appraise the evidence in the light of the factual context of the record before us. *State v. Fish*, 280 Minn. 163, 167, 159 N.W.2d 786, 789 (1968).

When there has been a recently committed felony, a police officer has the right to stop a person found in the vicinity of the crime and demand satisfactory identification. *Sullivan v. Commonwealth*, 210 Va. 201, 203, 169 S.E.2d 577, 579 (1969); *State v. Hatfield*, 112 W.Va. 424, 426-27, 164 S.E. 518, 519 (1932).

When a person is observed by a law enforcement officer under suspicious circumstances he is not clothed with the right of privacy which prevents a police officer from inquiring into his identity and actions. The welfare of the public demands that a law enforcement officer use his faculties of observation and act thereon within proper limits. It is not only the right, but the duty, of a police officer to investigate suspicious conduct, and he may "in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." See *Terry v. State of Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed. 2d 889, 907 (1968).

In the present case a robbery had been committed at approximately 1:50 a.m., and Officer Carroll was patrolling the area where the trail of the suspect was lost. Upon seeing a taxicab with a passenger leaving the area at 3:00 a.m., the officer had the right to stop the cab and to make inquiry as to the identification of the passenger. Upon learning from the driver that the passenger had entered the cab in the same block of the street where the suspect's trail was lost, and observing that the defendant was thinly clad on a cold night, the police officer was justified in requesting him to step out of the cab. Even though the officer's suspicions were aroused, he obviously recognized that he did not have sufficient information on the identity of the suspected robber and probable cause to arrest the defendant. Thus no arrest was made. However, the circumstances demanded further inquiry as to defendant's identity. It

was not unreasonable under the circumstances here to detain the defendant in order for the detective in charge of the robbery investigation to question him as to his identity and reason for his being in the area at that hour of the morning.

Defendant's conflicting answers to Detective Johnson's questions concerning his reason for being in the area under search at 3:00 a.m., his bulging pockets and his manner of dress gave the detective reasonable grounds to believe that defendant was the man involved in the Holiday Inn robbery and to place him under arrest.

Probable cause exists where the facts and circumstances known to the officer warrant a man of reasonable caution in believing the suspect has committed an offense. *Henry* v. *United States, supra,* 361 U.S. at 102, 80 S.Ct. at 171, 4 L.Ed.2d at 138; *Brinegar* v. *United States,* 338 U.S. 160, 175-76, 69 S.Ct. 1302, 1310-11, 93 L.Ed. 1879 (1949).

Since probable cause existed prior to defendant's removal of the money from his pocket, it is not necessary to decide whether his action was voluntary.

When the evidence shows that probable cause exists for arresting a suspect for a felony, and it is clear that evidence seized in a contemporaneous search of the suspect's person was not necessary to establish probable cause, the search is incidental to the arrest and is valid whether it takes place at the moment the arresting officer takes the suspect into custody or when he announces that the suspect is under arrest. *Husty* v. *United States,* 282 U.S. 694, 700, 51 S.Ct. 240, 241, 75 L.Ed. 629 (1931).

We hold that the arrest did not occur when the taxicab was stopped and defendant was told to get out, but that the factual circumstances which developed thereafter established probable cause for the arrest and search of defendant's person without a warrant.[1] Hence the money and the gun were not obtained as the result of an illegal arrest, and the trial court correctly overruled the defendant's motion to suppress the evidence.

■ Defendant contends that it was error to refuse his offered instruction No. B, which was a circumstantial evidence instruction. He says that this instruction was especially necessary to enable the jury to consider the importance of discrepancies in the description of the robber and the defendant, and in the amount of money stolen and that found.

---

1. A warrant is not required in making an arrest for a felony. *Williams* v. *Peyton,* 208 Va. 696, 699, 160 S.E.2d 581, 583 (1968).

Here the record discloses that other instructions given by the court adequately covered the substance of instruction No. B, and it was not error for the trial judge to refuse it. *Puckett v. Commonwealth*, 182 Va. 237, 242, 28 S.E. 2d 619, 621 (1944).

For the reasons stated, the judgment is

*Affirmed.*