# CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Travis Jermaine Isaac

December 31, 2009

Case No. FE 2009-1206

By Judge Stanley P. Klein

Defendant Travis Jermaine Isaac was indicted by a grand jury on July 20, 2009, on one count of Aggravated Involuntary Manslaughter under Virginia Code § 18.2-36.1, one count of Driving While Intoxicated ("DWI"), and one count of Driving on a Suspended Operator's License. This matter is before the Court on Mr. Isaac's Motion *in Limine* Seeking Exclusion of Blood Alcohol Content Test Results Set Forth in Certificate of Analysis, which alleges that the Commonwealth failed to comply with the requirements set forth in Virginia Code § 18.2-268.2. After conducting a hearing on Mr. Isaac's motion on November 6, 2009, the Court orally advised the parties of its ruling and informed them that a letter opinion would follow. After full consideration of the applicable governing authorities, the relevant evidence, and the arguments presented both orally and in writing, the Court now denies the Motion *in Limine* for the reasons set forth herein.

## I. *Background*

The facts material to the instant Motion *in Limine* are not contested. The findings of fact herein are based on evidence presented at the November 6, 2009, hearing, including a transcript of the October 30, 2009, hearing

on a Motion to Suppress before Judge Marcus D. Williams, introduced as Exhibit C.

On March 21, 2009, at approximately 3:28 a.m., Mr. Isaac was operating a motor vehicle in an eastbound direction in the westbound lanes of Interstate 495 in Fairfax County, Virginia. Mr. Isaac's vehicle struck, head on, a motor vehicle operated by Cristina L. Palese, who was traveling westbound in the westbound lanes. Within a few minutes of the collision, Trooper Daly and Trooper Whitt of the Virginia State Police arrived separately at the accident scene and observed the condition of the two drivers who were entrapped in their respective vehicles. Appearing to have severe leg injuries, Mr. Isaac was conscious and screaming. Ms. Palese was unconscious and non-responsive. Numerous police and fire personnel soon arrived to secure the area and attend to the two injured drivers, and shortly thereafter emergency rescue personnel transported both drivers from the accident scene. Ms. Palese was pronounced dead in the Alexandria Hospital emergency room.

Mr. Isaac was transported to INOVA Fairfax Hospital ("the Hospital"). Trooper Daly responded to the Hospital[1] and identified Mr. Isaac, who was now unconscious and non-responsive. Trooper Daly identified Mr. Isaac once a nurse gave her a bag of his belongings, which included his clothing and picture identification. When Trooper Daly offered Mr. Isaac a preliminary breath test, he was still non-responsive. Then, at approximately 5:47 a.m., Trooper Daly told Mr. Isaac that he was under arrest for DWI,[2] and contemporaneously read out loud the provisions of Virginia's implied consent law. Mr. Isaac remained non-responsive. Trooper Daly remained with Mr. Isaac as he was transported to another room in the Hospital where Basil Belgrave, a nurse, administered a blood test in accordance with Virginia Code §§ 18.2-268.5 to 18.2-268.7. These Code sections prescribe, *inter alia*, the qualifications of medical personnel who draw blood samples for blood alcohol testing, as well as the procedures for taking, handling, and identifying the blood samples. Trooper Daly then accompanied Mr. Isaac back to his room after the blood sample was drawn.

Shortly thereafter, Trooper Whitt arrived at the Hospital to relieve Trooper Daly and maintained watch over Mr. Isaac. Trooper Daly then reported to the Fairfax County Magistrate's office. Based upon Trooper

---

[1] While it is unclear whether Trooper Daly responded to the Hospital directly from the accident scene, or first stopped by Virginia State Police barracks to pick up an implied consent form, any such minor delay in responding to the Hospital is immaterial to the instant issue.

[2] Trooper Daly decided to place Mr. Isaac under arrest due to (1) her belief that Mr. Isaac was driving the wrong way on Interstate 495, causing a head on collision; (2) her observation of a bottle of vodka on the passenger floorboard of the vehicle that Mr. Isaac was operating at the time of the accident; and (3) the strong odor of alcohol that she smelled on Mr. Isaac's clothing when she opened the bag containing his belongings.

Daly's testimony, Magistrate Nguyen issued warrants for Mr. Isaac for aggravated involuntary manslaughter, DWI, and driving on a suspended operator's license. Trooper Daly subsequently returned to the Hospital to relieve Trooper Whitt, and monitored Mr. Isaac until Trooper Hindenlang relieved her at approximately 10:45 a.m.

Trooper Hindenlang accompanied Mr. Isaac as he went to surgery, and Trooper Bryant relieved him in the early afternoon that same day, March 21, 2009. At approximately 11:00 p.m. that same day, Trooper Daly relieved Trooper Bryant. In the early morning hours the next day, March 22, 2009, Trooper Groner relieved Trooper Daly. At approximately 9:00 a.m. that morning, the Fairfax County Magistrate's office issued a commitment order with respect to Mr. Isaac, ordering him to the custody of the Fairfax County Sheriff's Office. Personnel of the Sheriff's Office subsequently relieved Trooper Groner, and continued to watch over Mr. Isaac at the Hospital. Mr. Isaac remained in the Sheriff's unremitting custody through his discharge from the Hospital on March 29, 2009. Upon his discharge, Mr. Isaac was directly transferred to the Fairfax County Adult Detention Center ("Detention Center").

The sample of Mr. Isaac's blood taken at about 5:47 a.m. on March 21, 2009, was analyzed by Linda C. Moses, an employee of the Department of Forensic Science, who determined that the blood alcohol content ("BAC") of the sample was .16%. The results of the blood analysis are set forth in a Certificate of Analysis dated April 8, 2009, which the instant Motion *in Limine* seeks to exclude from the evidence to be presented at trial. Mr. Isaac argues that the Commonwealth failed to comply with Virginia Code § 18.2-268.2, which requires a law enforcement officer to arrest a DWI suspect within three hours of the alleged offense before the suspect can be required to submit to a blood test. The Commonwealth responds that Trooper Daly timely placed Mr. Isaac under arrest before the nurse administered the blood test.

## II. *Analysis*

Virginia's implied consent law, which applies to post-arrest breath and blood testing, provides:

> Any person . . . who operates a motor vehicle upon a highway . . . in the Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, *if he is arrested* for violation of [*inter alia*, DWI] *within three hours of the alleged offense.*

Va. Code § 18.2-268.2(A) (emphasis added).

Further, Va. Code § 19.2-81 authorizes law enforcement officers to make a warrantless arrest at a hospital of any person involved in a motor vehicle accident even though the crime was not committed in the officer's presence, provided the officer is in uniform or displaying a badge and has reasonable grounds to believe based upon personal investigation that a crime arising from the accident was committed by that person. Va. Code § 19.2-81. The parties do not contest for the purpose of the instant motion that Trooper Daly was in uniform or displaying a badge. Moreover, in denying his Motion to Suppress, this Court has ruled that Trooper Daly had reasonable grounds to believe that Mr. Isaac committed the alleged crimes.

Accordingly, when a defendant allegedly operates a motor vehicle while under the influence of alcohol, he must be arrested within three hours of the alleged offense before he can be required to submit to a breath or blood test. As the driver's timely arrest triggers the statutory consent provision, an untimely arrest precludes introduction of the relevant test results as proof of an alcohol-related offense. *Overbee v. Commonwealth*, 227 Va. 238, 243, 315 S.E.2d 242, 244 (1984); *Cutright v. Commonwealth*, 43 Va. App. 593, 601, 601 S.E.2d 1, 5 (2004) (holding that, in the absence of a timely arrest, "the Commonwealth has no right to collect the [blood] sample in the first place and, *a fortiori*, even less right to offer into evidence test results based on the sample."); *Williams v. Commonwealth*, 38 Va. App. 414, 420, 565 S.E.2d 328, 331 (2002), aff'd, 265 Va. 268, 576 S.E.2d 468 (2003).

The Virginia Code does not define the term "arrest." Generally, "the common law relating to arrest is the law on that subject in Virginia." *Galliher v. Commonwealth*, 161 Va. 1014, 1021, 170 S.E. 734, 736 (1933). The Supreme Court of Virginia has articulated that an arrest may be effected in one of two ways. First, an arrest occurs when an officer physically restrains a suspect. *Bristol v. Commonwealth*, 272 Va. 568, 573, 636 S.E.2d 460, 463 (2006). Under this physical restraint prong, there must be some physical touching, however slight. *Id; Hall v. Commonwealth*, 55 Va. App. 451, 686 S.E.2d 554, 2009 Va. App. LEXIS 567, at *5, 8 (Dec. 22, 2009) ("the slightest touching of an officer to the person of a suspect for the purpose of arrest accomplishes an arrest") (holding that the officer arrested the defendant by grabbing his wrist and informing him that he was under arrest). Second, an arrest also occurs when the suspect submits to the officer's assertion of authority and purpose to arrest. *Bristol* at 568, 573, 636 S.E.2d at 463. While the first prong does not apply in the present case, as there is no evidence that Trooper Daly physically touched Mr. Isaac before the blood test was administered, the Commonwealth nevertheless argues that Trooper Daly timely arrested Mr. Isaac under the second prong.

In setting forth this two-part test for what constitutes an "arrest," the *Bristol* court primarily relied on the Supreme Court of the United States' decision in *California v. Hodari D.*, 499 U.S. 621, 111 S. Ct. 1547, 113

L. Ed. 2d 690 (1991). In *Hodari D.*, two police officers were chasing a group of youths, including the defendant, who had fled at the sight of the officers' car. *Id.* at 622-23. Right before one of the officers caught up with the fleeing defendant, the defendant tossed away a small object which the police later found to be crack cocaine. *Id.* at 623. In determining whether the defendant was seized under the Fourth Amendment, the Court laid out the above two-part test for what constitutes an "arrest," which the Court deemed the "quintessential seizure of a person." *Id.* at 624-26. The Court then held that the defendant was not seized because (1) the officer did not touch him at the time he discarded the crack cocaine; and (2) even if the officer's pursuit constituted a show of authority enjoining the defendant to halt, the defendant did not comply with that injunction and, therefore, was not seized until the officer tackled him. *Id.* at 625, 629.

Similarly, the Court of Appeals of Virginia found that a suspect was not arrested under the following scenario:

> In the present case, [the officer] did not effectuate appellant's arrest; he neither touched appellant nor obtained appellant's submission to his show of authority. Each time [the officer] spoke to appellant, appellant responded with profanity; when [the officer] told appellant not to run, appellant responded that he was going to run, and he did. In short, the evidence shows that appellant did not submit, in any respect, to [the officer's] show of authority, and appellant was not detained by the exercise of any physical restraint at the time he fled.

*Cavell v. Commonwealth*, 28 Va. App. 484, 487, 506 S.E.2d 552, 553 (1998). There, the officer did not physically touch the suspect, and when the officer spoke to and commanded that the suspect stay put, the suspect brazenly disrespected the officer and then fled. In other words, the suspect actively, not merely passively, refused to yield to the officer's show of authority and purpose to arrest. In sum, the *Hodari D.* and *Cavell* courts both held that no arrests had been effected because the defendants actively resisted the police officers' attempts to induce them to submit to the officers' lawful authority. Mr. Isaac also relies on *Sprouse v. Commonwealth*, which is inapposite because the Court of Appeals did not analyze whether the defendant was arrested, as the alleged arrest occurred only *after* the blood test was administered. *Sprouse v. Commonwealth*, 53 Va. App. 488, 493, 673 S.E.2d 481, 483 (2009).

In addition to a suspect's active refusal to submit to an officer's show of authority, the absence of probable cause to arrest can also overcome an argument that an arrest has occurred. In *Howard v. Commonwealth*, for example, a police officer directed the defendant to step out of a taxi cab that was located near the scene of a crime. *Howard v. Commonwealth*, 210

Va. 674, 677, 173 S.E.2d 829, 832 (1970). While the suspect submitted to the officer's authority by complying with his demand, the Supreme Court held that no arrest was made in "light of the factual context." *Id.* As the Court explained, "even though the officer's suspicions were aroused, he obviously recognized that he did not have sufficient information on the identity of the suspected robber and probable cause to arrest the defendant." *Id.* As the officer lacked probable cause, the suspect could not have been deemed "under arrest" notwithstanding his submission to the officer's authority. Accordingly, the Court's analysis did *not* solely focus on whether the defendant submitted to the officer's authority, because whether such submission resulted in an arrest had to be objectively evaluated in light of the officer's actions. *See id.*

Subsequently, the Supreme Court of Virginia found in *Bristol v. Commonwealth* that a suspect was not under "arrest" where, although an officer told the suspect that he was "under arrest" and the suspect then agreed to a blood test, the officer never took any additional steps to exert any control over the suspect. In addition, the officer did not physically touch the suspect. *Bristol*, 272 Va. at 574, 636 S.E.2d at 463. *Bristol*, 272 Va. at 574, 636 S.E.2d at 463-64. The *Bristol* court opined that "[a]n arrest completed by a suspect's submission to police authority must manifest the suspect's complete surrender of his personal liberty to the officer's authority." *Id.* at 573-74, 636 S.E.2d at 463. "Thus, after an arrest, a suspect's liberty is completely constrained, at least until a judicial officer has determined the issue of bail." *Id.* (citing *Commonwealth v. Hill*, 264 Va. 541, 547, 570 S.E.2d 805, 808 (2002)). In holding that Bristol's consent did not constitute "a complete surrender of his personal liberty in submission to [the officer's] assertion of authority," the Court emphasized that the officer did not even attempt to restrict the suspect's movements either before or after the blood sample was drawn, as the officer "merely accompanied" the suspect to the emergency room, and then afterwards left the hospital, taking no action to constrain the suspect's liberty. *Id.* The Court further stressed that, when the suspect was discharged and left the hospital purely on his own accord, he was not taken into custody or before a magistrate. *Id.* at 572, 574, 636 S.E.2d at 462-63.

While the *Bristol* court may have framed the issue as being whether the suspect completely surrendered his personal liberty in submission to the officer's authority, the Court's analysis focused on the *officers' actions*, not otherwise the suspect's submission. Thus, any inquiry into an arrest effected by submission must focus on an objective assessment of the officers' actions, as well as the defendant's acquiescence, but *not* on the suspect's actions. In other words, the Supreme Court neither analyzed nor determined whether the suspect subjectively believed that he was under arrest, or whether his consent to the blood test was voluntary. Rather, the Court employed an objective totality-of-the-circumstances analysis that

focused principally on the efforts, or lack thereof, undertaken by the officers to restrain the suspect's freedom of movement. As the officers did virtually nothing to prevent the suspect from leaving the hospital on his own accord, the Court found that no arrest had been accomplished. *Id.*

Indeed, *Black's Law Dictionary* defines an arrest as (1) a "seizure or forcible restraint"; or (2) the "*taking or keeping of a person in custody by legal authority,* especially in response to a criminal charge; specifically, the apprehension of someone for the purpose of securing the administration of the law." *Black's Law Dictionary* 116 (8th ed. 2004) (emphasis added). This definition further suggests that an inquiry into whether a defendant was "arrested" under the second prong of the *Bristol* test should be objectively based on the law enforcement officers' actions in restraining the defendant's personal liberty. Thus, this Court holds that, as applied to Va. Code § 18.2-268.2, an arrest occurs under the second prong of the *Bristol* test when law enforcement officers' actions objectively establish that they have taken sufficient steps to ensure that a suspect remain under their control, thereby effecting the suspect's complete surrender of his personal liberty to the officers' authority.

Here, unlike the defendant in *Bristol*, Mr. Isaac was not, *at any time*, even remotely free to leave the Hospital on his own accord, and the officers' actions went far beyond a mere statement that Mr. Isaac was under arrest. *See Bristol*, 272 Va. at 573, 636 S.E.2d at 463 (the "mere words of an officer stating to a suspect that he is 'under arrest' are not sufficient to constitute an arrest."). To the contrary, Mr. Isaac remained under the uninterrupted and watchful supervision of the Virginia State Police and the Fairfax County Sheriff's Office from the moment law enforcement personnel arrived at the Hospital to the moment Mr. Isaac was discharged from the Hospital and contemporaneously transferred to the Detention Center. An objective view of the stipulated evidence setting forth the actions of the law enforcement personnel (1) at the Hospital, (2) in securing the warrant from the Magistrate, and (3) in transporting Mr. Isaac directly to the Detention Center upon his discharge from the Hospital, all support the finding that Trooper Daly both intended, and did, in fact, place Mr. Isaac under arrest prior to the administration of the blood test. The lack of any resistance by Mr. Isaac to the officers' absolute control over him thus manifested a complete submission of his personal liberty to the officers' authority, and Mr. Isaac's unconscious state at the time of the arrest bears no legal significance.

Ultimately, to extend the *Bristol* analysis to cover the facts of this case, as Mr. Isaac urges, would create a hazardous requirement that a law enforcement officer intrude into a sanitary operating room, thereby interrupting the medical personnel and potentially endangering a suspect's life, merely to physically touch an unconscious suspect for the sole purpose of ensuring the "legality" of an "arrest." This Court refuses to require such an ill-advised and dangerous gesture in interpreting Va. Code § 18.2-268.2.

*See Crown Cent. Petro. Corp. v. Hill*, 254 Va. 88, 91, 488 S.E.2d 345, 346 (1997) (stating that while the legislature's "intention is initially found in the words of the statute itself . . . [a court should not adopt] a literal application [that] would produce a meaningless or absurd result").

### III. *Conclusion*

Mr. Isaac impliedly consented to have his blood drawn because he was timely arrested pursuant to Virginia Code § 18.2-268.2. Accordingly, and for the reasons set forth above, his Motion *in Limine* is denied.