COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Felton, Judges Elder and Beales
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1379-10-1                       JUDGE RANDOLPH A. BEALES
                                                         NOVEMBER 23, 2010
CRAIG MICHAEL MELVIN, JR., A/K/A
  CRAIG MARCEL MELVIN, JR.


               FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                              Louis A. Sherman, Judge

          Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
          Cuccinelli, II, Attorney General, on brief), for appellant.

          (William L. Taliaferro, Jr., on brief), for appellee.


        Craig Michael Melvin was charged with possession of a controlled substance with the intent

to distribute. Prior to his trial, Melvin filed a motion to suppress evidence collected by the police,

based on alleged violations of his Fourth Amendment rights. The circuit court granted Melvin's

motion. The Commonwealth then appealed to this Court, pursuant to Code § 19.2-398(A)(2).

                                       I. BACKGROUND

        At approximately 11:10 p.m. on June 14, 2009, Craig Melvin drove into a convenience

store's parking lot and parked his truck to the side of the building. A private security guard,

Donald Green, noticed the truck, and another car parked beside it, so he went over to investigate.

Green saw a woman leaning into Melvin's truck on the driver's side. Curious about what the

woman and Melvin were doing, Green walked closer and looked into the vehicle, where he saw a

baggie containing an off-white substance in Melvin's lap.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Green told Melvin to get out of the truck, and then he handcuffed both Melvin and the woman. Looking around for the baggie, Green asked Melvin where it had gone. Melvin told Green that it was in his pocket. Acting on this information, Green reached into Melvin's pocket and pulled out the baggie. Green looked at it and then put the baggie back into Melvin's pocket. Green asked Melvin "what it was," and, initially, Melvin responded, "You know what it is." Melvin eventually admitted that the baggie contained crack cocaine. Green then called his supervisors and the police.

Officer Brandon Shum of the City of Norfolk Police Department arrived at the convenience store just after midnight, responding to a "Narcotics in progress call." After Officer Shum got out of his patrol car, Green approached Shum and "described the scenario of what was going on at that point," giving the officer "a summary of what had happened."

Officer Shum took the handcuffs off Melvin and replaced them with police department handcuffs. He then led Melvin to the patrol car, telling Melvin that he was not under arrest "at this time." Instead, Officer Shum told Melvin that he was being held in "investigative detention."

The officer then asked Melvin, "Is there anything I need to be aware of? Do you have any weapons or anything like that on you?" Melvin responded, "They are in my right front pocket." The officer asked if he could reach into the pocket, and Melvin said, "Yes." Officer Shum then reached into that pocket and pulled out "four small loose individual baggies and one medium size bag that contained approximately ten small individual rocks of what appeared to be crack." The officer then put Melvin under arrest, did a complete search of his person, and discovered four more "small individually wrapped bags" in Melvin's left front pocket.

Prior to trial, Melvin filed a motion to suppress the evidence collected that night. After the parties presented their arguments, the circuit court concluded that Green was simply a private

security guard and not a state actor. Therefore, the court concluded, the Fourth Amendment did not apply to his actions.[1] The circuit court then found that Melvin had not voluntarily consented to the search by Officer Shum. Thus, the court concluded, the evidence should be suppressed.

The Commonwealth responded to the circuit court's finding by arguing that the officer also had probable cause to search Melvin, so he did not need consent. However, the circuit court concluded that, even if Officer Shum had probable cause, he did not have authority under the Fourth Amendment to search Melvin. The court then granted Melvin's motion to suppress. The Commonwealth appealed this ruling, specifically claiming as its assignment of error that the circuit court "erred in holding that the police officer needed consent to search" Melvin's pockets.

## II. ANALYSIS

The Commonwealth argues on appeal that Officer Shum had probable cause to arrest Melvin before reaching into Melvin's pocket, and, therefore, Melvin's Fourth Amendment rights were not violated, even though the search occurred before his arrest. Melvin argues that Officer Shum did not have probable cause to arrest him.[2]

### A. Standard of Review

When the Commonwealth appeals a circuit court's decision to grant a motion to suppress, we review the evidence in the record on appeal in the light most favorable to the defendant (here, Melvin) as the party who prevailed before the circuit court. See Commonwealth v. Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992); Commonwealth v. Grimstead, 12 Va. App.

---

[1] This finding is not challenged now on appeal.

[2] Melvin on brief also makes an argument based on reasonable suspicion and Terry v. Ohio, 392 U.S. 1 (1968), arguing that the officer was not concerned about his safety and, therefore, did not have legal justification to frisk Melvin. However, as we find that Officer Shum had probable cause to arrest Melvin, we need not address other exceptions to the Fourth Amendment's warrant requirement. Cf. Arizona v. Gant, 129 S. Ct. 1710, 1721 (2009) (explaining that only one exception to the warrant requirement needs to apply to a situation in order to find an officer's behavior was permissible under the Fourth Amendment).

1066, 1067, 407 S.E.2d 47, 48 (1991). In cases involving Fourth Amendment issues, "we give deference to the historical facts determined by the circuit court, but we review de novo whether the legal standard of probable cause was correctly applied to the historical facts." Brown v. Commonwealth, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005). "The issue of whether an officer acted with probable cause and under exigent circumstances, however, is a mixed question of fact and law that we review de novo." Robinson v. Commonwealth, 273 Va. 26, 39, 639 S.E.2d 217, 224-25 (2007). In this case, the parties do not disagree about the facts. They disagree only on how the law applies to those facts. Therefore, this case involves solely *de novo* review.

### B. Probable Cause

Under the Fourth Amendment, an officer who has probable cause can place a suspect under arrest and conduct a search incident to that arrest. See United States v. Robinson, 414 U.S. 218, 224-29 (1973) (discussing "the traditional and unqualified authority of the arresting officer to search the arrestee's person"). An officer who has probable cause may also conduct a search of a suspect prior to placing that suspect under arrest. As the Supreme Court of Virginia has stated, "A general rule recognized by both federal and state courts is that when probable cause exists to arrest a person, a constitutionally permissible search of the person incident to arrest may be conducted by an officer *either before or after* the arrest if the search is contemporaneous with the arrest." Italiano v. Commonwealth, 214 Va. 334, 336, 200 S.E.2d 526, 528 (1973) (per curiam). The Supreme Court explained this rule in Howard v. Commonwealth, 210 Va. 674, 678, 173 S.E.2d 829, 833 (1970),

> When the evidence shows that probable cause exists for arresting a
> suspect for a felony, and it is clear that evidence seized in a
> contemporaneous search of the suspect's person was not necessary
> to establish probable cause, the search is incidental to the arrest
> and is valid whether it takes place at the moment the arresting

> officer takes the suspect into custody or when he announces that the suspect is under arrest.

Therefore, the question that we must resolve here is whether Officer Shum had probable cause to arrest Melvin before he reached into the pocket and pulled out the crack cocaine.

When considering probable cause, we are mindful that:

> The legal standard of probable cause, as the term suggests, relates to probabilities that are based upon the factual and practical considerations in everyday life as perceived by reasonable and prudent persons. The presence or absence of probable cause is not to be examined from the perspective of a legal technician.

Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981). "Probable cause exists where the facts and circumstances known to the officer warrant a man of reasonable caution in believing the suspect has committed an offense." Howard, 210 Va. at 678, 173 S.E.2d at 833.

In this case, Officer Shum knew that Green had pulled a baggie containing an off-white substance from Melvin's pocket and that Melvin had admitted to Green that the substance was crack cocaine.[3] Officer Shum knew the crack cocaine was still in Melvin's possession because Green had returned the baggie to the pocket where he found it and because Melvin himself told the officer that "they" were in his pocket. Therefore, Officer Shum certainly had sufficient information to reasonably conclude that Melvin was in possession of a controlled substance.

The Supreme Court's opinion in Parker v. Commonwealth, 255 Va. 96, 496 S.E.2d 47 (1998), is informative here. In that case, Officer Kurisky saw Parker, as he was leaving an area that the officer considered an open-air drug market, put something in the waistband of his shorts. Id. at 99, 496 S.E.2d at 49. The officer followed Parker and, while talking to him, saw a pink object through the fabric of Parker's shorts. Id. The officer knew, based on his experience, that

---

[3] Melvin does not argue in this appeal that Green's actions were in violation of the Fourth Amendment.

- 5 -

people often hide drugs in their pants and that pink baggies are often used to package crack cocaine. Id. at 107, 496 S.E.2d at 53. Officer Kurisky placed his hand on the object, realized it was crack cocaine, and then removed the object from Parker's shorts. Id. at 99, 496 S.E.2d at 49. The Supreme Court found that Parker's Fourth Amendment rights were not violated because, based on the totality of the circumstances, "Officer Kurisky did indeed have probable cause to believe that the defendant had committed a crime" before he reached into the shorts. Id. at 106, 496 S.E.2d at 53.

The essential facts here are similar to the facts presented in Parker. Here, Green had seen the suspected cocaine, and Melvin had admitted that it was crack cocaine. Green relayed this information to Officer Shum. When the officer then asked Melvin, "Is there anything I need to be aware of," Melvin responded, "They are in my right front pocket." Therefore, just as the officer in Parker had probable cause to conclude that the pink item was cocaine before he reached into Parker's shorts, Officer Shum in this case also had probable cause to conclude that Melvin had cocaine in his pocket before he reached into that pocket to retrieve the contraband. Because he had probable cause to arrest Melvin for possession of a controlled substance before reaching into the pocket, Officer Shum's actions were permissible under the Fourth Amendment, even if he did not have Melvin's consent for the search. Id. at 105-06, 496 S.E.2d at 52-53 (agreeing that Parker did not consent to the officer's removal of the cocaine from his shorts, but finding that probable cause justified the officer's actions under the Fourth Amendment).

Melvin contends that Officer Shum testified that he did not have probable cause for an arrest when reaching into Melvin's pocket. Therefore, Melvin argues, a court cannot conclude that he actually had probable cause. Melvin's argument is not consistent with the record in this case, nor is it consistent with the law.

First, Officer Shum never testified that he lacked probable cause to arrest Melvin.  He testified only that he told Melvin that he was not under arrest at that time, but instead was under investigative detention.  Therefore, Melvin's very premise – that the officer conceded his lack of probable cause – is incorrect because Officer Shum never testified as Melvin claims he did.

In addition, the subjective legal conclusions of an officer do not determine whether that officer had probable cause to arrest a suspect.  Arkansas v. Sullivan, 532 U.S. 769, 772 (2001) (restating the rule that "'subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis'" (quoting Whren v. United States, 517 U.S. 806, 813 (1996))); McCain v. Commonwealth, 275 Va. 546, 552, 659 S.E.2d 512, 516 (2008) ("Review of the existence of probable cause or reasonable suspicion involves application of an objective rather than a subjective standard."); Brown, 270 Va. at 419, 620 S.E.2d at 762 ("Whether an officer has probable cause to arrest an individual in the absence of a warrant is determined under an objective test based on a reasonable and trained police officer's view of the totality of the circumstances."); Armstead v. Commonwealth, 56 Va. App. 569, 579 n.7, 695 S.E.2d 561, 565 n.7 (2010) (explaining that courts should consider "what a reasonable, objective officer could have concluded from the totality of the circumstances" when determining if probable cause existed).  Therefore, for the foregoing reasons, we conclude that Officer Shum did have probable cause to arrest Melvin before he put his hand into Melvin's pocket.

## III.  CONCLUSION

We hold that the circuit court erred when it granted Melvin's motion to suppress. Therefore, we reverse that decision and remand this case to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.