COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Beales and Athey
Argued at Lexington, Virginia

**UNPUBLISHED**

MARSHALL SYLVAN SILVER, JR.

MEMORANDUM OPINION[*] BY
v.        Record No. 0201-19-3          JUDGE CLIFFORD L. ATHEY, JR.
                                        FEBRUARY 11, 2020

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

Michael A. Nicholas (Daniel, Medley & Kirby, P.C., on brief), for
appellant.

Timothy J. Huffstutter, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Following a jury trial in the Circuit Court for the City of Danville ("trial court"),

appellant Marshall Sylvan Silver, Jr. ("Silver") was convicted of first-degree murder, in violation

of Code § 18.2-32, and, pursuant to the jury's recommendation, Silver was sentenced to twenty

years' imprisonment. Silver was also convicted of using a firearm in the commission of murder,

in violation of Code § 18.2-53.1, and sentenced to an additional three years of incarceration. On

appeal, Silver assigns error to the trial court's refusal to instruct the jury on the elements of

voluntary manslaughter. Assuming without deciding that Silver presented more than a scintilla

of evidence to support a jury instruction on the lesser and included offense of voluntary

manslaughter, the failure of the trial court to grant Silver's requested instruction would be

harmless error. Accordingly, we affirm Silver's convictions.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. Standard of review

"When reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction." Commonwealth v. Vaughn, 263 Va. 31, 33 (2002). In this case, Silver proposed the jury instruction.

# II. Factual Background

Beginning on the evening of July 4, 2018, and extending into the early morning hours of July 5, 2018, Jackie Tolliver consumed alcohol with the victim. They eventually ended up at Tolliver's home where they met up with Silver.

The victim asked Silver if he could buy a "twenty," and Silver responded, "where my money at?" An argument about the money ensued, and Silver killed the victim by shooting him in the chest. Silver then dragged the victim's body into the backyard of Tolliver's home, before rifling through the victim's pockets. Silver then returned inside and, before leaving, warned Tolliver to remain silent about what he had witnessed.

Tolliver subsequently contacted the police, advising them that he had discovered the victim's body behind his house. After arriving at Tolliver's home, officers located a knife tucked into the waistband of the victim's pants, as well as bloodstains inside Tolliver's home.

Two days after the shooting, police investigators also learned that Silver pawned a handgun. Forensic testing later confirmed that the pawned handgun was the handgun that fired the bullet recovered from the victim's body.

On July 10, 2018, Tolliver identified Silver in a lineup and finally told the police about what he had observed during the early morning hours of July 5, 2018. Silver contacted Tolliver by phone, during the interview, asking what Tolliver had told the police.

Silver was first interviewed by Detective Steve Richardson on July 12, 2018. Silver initially told the detective that he was at home with his children's mother in the early morning

hours of July 5, 2018, before changing his story and admitting that he had killed the victim. Silver also claimed, during that first interview, that the victim owed him money and had pulled a knife on him which was why Silver shot the victim in self-defense. Silver also told the detective that he had "found" the handgun he used that night, which he left at the scene of the crime. Silver then changed his story again providing a second version of events in which he admitted to carrying the gun from his home because he had to make a "drug delivery." He added that the fight, leading to the shooting, ensued over thirty dollars the victim owed him and that the victim attacked him with a knife during the fight, which was the immediate reason he shot the victim in self-defense. He denied removing any items, including money, from the victim's body following the shooting.

Silver changed his story yet again, providing a third version of events wherein he admitted that, following the shooting, he did steal $500 in what appeared to be fake currency from the victim's sock. Silver then stated, for the first time, that the victim had attempted to pay Silver for drugs with fake money and also pulled a knife on him, which precipitated the shooting. In the third version of events, Silver admitted to dragging the body outside, rifling through the victim's pockets, and taking the $500 from the victim's sock before returning inside and asking Tolliver not to speak to the police. Then Silver admitted that he had lied about the victim pulling a knife, and he stated that the victim had pushed him, which was why he shot the victim in self-defense.

During the trial, Silver testified that the victim wanted to buy drugs from him and when Silver advised the victim that he had no drugs for sale, an argument ensued. Silver also testified that the victim gestured to Silver's hip and said "well, you got something" referring to Silver's gun. Silver testified that the victim then attempted to put him in some kind of hold, but that

Silver reached for his gun and killed the victim in self-defense. Silver also testified that he pawned the firearm used in the killing.

On cross-examination, Silver denied recalling any previous statements to Detective Richardson because he was intoxicated and high on drugs at the time of the interview. Silver blamed the detective for persuading him that the victim did not have a knife and denied ever stating that the victim owed him thirty dollars.

At the close of all the evidence, Silver proffered a jury instruction on the lesser and included offense of voluntary manslaughter. The trial court rejected the instruction on voluntary manslaughter, finding there was not a scintilla of evidence to support the instruction for voluntary manslaughter. The jury was instructed on the elements of first-degree murder and the lesser-included offense of second-degree murder. Silver was subsequently convicted of first-degree murder and the use of a firearm in the commission of a felony.

### III. ANALYSIS

"As a general rule, the matter of granting and denying instructions does rest in the sound discretion of the trial court." Cooper v. Commonwealth, 277 Va. 377, 381 (2009). However, "[i]f any credible evidence in the record supports a proffered instruction on a lesser included offense, failure to give the instruction is reversible error." Brandau v. Commonwealth, 16 Va. App. 408, 411 (1993) (quoting Boone v. Commonweallth, 14 Va. App. 130, 132 (1992)). "Such an instruction, however, must be supported by more than a mere scintilla of evidence." Id. (quoting Boone, 14 Va. App. at 132). Thus, a reviewing court's "sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." Cooper, 277 Va. at 381 (quoting Molina v. Commonwealth, 272 Va. 666, 671 (2006)). This Court reviews the record to determine whether

there was more than a scintilla of credible evidence in support of the proponent's jury instruction. To the extent that an issue of law may be raised, this Court reviews it *de novo*.

Second-degree murder and voluntary manslaughter are both lesser-included offenses of first-degree murder. Puckett v. Commonwealth, 182 Va. 237, 240 (1944). First-degree murder is defined as "a malicious killing accomplished by a willful, deliberate, and premeditated act." Turner v. Commonwealth, 23 Va. App. 270, 274 (1996), aff'd, 255 Va. 1 (1997) (affirming "[f]or the reasons stated by the Court of Appeals"). For an act to be done maliciously, the act must be done "willfully or purposefully." Essex v. Commonwealth, 228 Va. 273, 280 (1984) (quoting Williamson v. Commonwealth, 180 Va. 277, 280 (1942)). "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." Branch v. Commonwealth, 14 Va. App. 836, 841 (1992).

Voluntary manslaughter, by contrast, is the unlawful killing of another, "committed in the course of a sudden quarrel, or mutual combat, or upon a sudden provocation, and without any previous grudge, and the killing is from the sudden heat of passion growing solely out of the quarrel, or combat, or provocation." Wilkins v. Commonwealth, 176 Va. 580, 583 (1940). "Heat of passion refers to the furor brevis which renders a man deaf to the voice of reason." Rhodes v. Commonwealth, 41 Va. App. 195, 200 (2003) (quoting Caudill v. Commonwealth, 27 Va. App. 81, 85 (1998)). "[It] excludes malice when provocation reasonably produces fear [or anger] that causes one to act on impulse without conscious reflection." Id. (quoting Graham v. Commonwealth, 31 Va. App. 662, 671 (2000)). "Malice and heat of passion cannot coexist." Turner, 23 Va. App. at 275.

"As a general rule, whether provocation, shown by credible evidence, is sufficient to engender the furor brevis necessary to rebut the presumption of malice arising from a homicide

is a question of fact." McClung v. Commonwealth, 215 Va. 654, 656 (1975). However, "when the trial court, giving the defendant the benefit of every reasonable inference from the evidence, can say that minds of reasonable men could not differ does the question become a question of law." Id. In a trial for first-degree murder, "a trial court must instruct the jury on the lesser-included offense of voluntary manslaughter if the evidence of heat of passion and reasonable provocation amounts to 'more than a scintilla.'" Turner, 23 Va. App. at 275.

In this case, Silver does not assign error to the sufficiency of the evidence for first-degree murder, but instead argues that the trial court erred in denying Silver's proffered jury instruction for voluntary manslaughter. Thus, the threshold question before this Court is whether there is more than a scintilla of credible evidence supporting a jury instruction on voluntary manslaughter. The trial judge stated, "I don't think there's a scintilla of evidence to support an instruction on voluntary manslaughter," and denied the instruction. Even assuming without deciding that the trial court erred as a matter of law in failing to instruct the jury on voluntary manslaughter, we find that such error was harmless.

A non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Turman v. Commonwealth, 276 Va. 558, 567 (2008) (quoting Code § 8.01-678). "An error is harmless 'if a reviewing court can conclude, without usurping the jury's fact-finding function, that, had the error not occurred, the verdict would have been the same.'" Turner, 23 Va. App. at 275 (quoting Davies v. Commonwealth, 15 Va. App. 350, 353 (1992)). "Virginia law requires that in all criminal cases in which the appellate court finds that error occurred in the trial court, it must consider whether the error was harmless." Graves v. Commonwealth, 65 Va. App. 702, 711 (2016).

As Silver conceded during oral arguments, this panel is bound by the decision in Turner under the inter-panel accord doctrine. See Towler v. Commonwealth, 59 Va. App. 284, 293 (2011) (explaining that a decision by a panel of the Court "cannot be overruled except by the Court of Appeals sitting *en banc* or by the Virginia Supreme Court" (quoting Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 73 (2003))).

In Turner, the appellant shot and killed the victim after an ongoing conflict lasting four days preceding the shooting. Turner, 23 Va. App. at 272-73. Taking the evidence in the light most favorable to Turner, this Court held that the trial court erred in refusing the proffered jury instruction on voluntary manslaughter. Id. at 274. We found that because premeditation and provocation cannot coexist, when the jury returned a verdict "convicting appellant of first-degree murder, the jury rejected the lesser-included offense of second-degree murder. In so doing, the jury found beyond a reasonable doubt that appellant acted not only maliciously, but also willfully, deliberately, and premeditatedly." Id. at 277. "The verdict reached by the jury [in Turner] compels the conclusion that it would never have reached a voluntary manslaughter verdict." Id.; see also Jenkins v. Commonwealth, 244 Va. 445, 457-58 (1992) (finding a voluntary manslaughter instruction properly refused where evidence clearly showed killing premeditated), cert. denied, 507 U.S. 1036 (1993).

Similarly, the jury reached the same conclusion in this case when it convicted Silver of first-degree murder, instead of the lesser-included offense of second-degree murder. The jury here, as in Turner, would never have reached a voluntary manslaughter verdict as a result of convicting Silver of first-degree premeditated murder. In other words, the jury could not have found reasonable provocation because it found premeditation. Therefore, any alleged error in refusing to instruct the jury on voluntary manslaughter would be harmless. See Turner, 23 Va. App. at 277.

## IV. C<small>ONCLUSION</small>

The ruling of the trial court is affirmed.

<u>Affirmed.</u>